# Appendix 10 (cont.)

MetLife's own CFS Functional Assessment form

| METLIFE CHRONIC FATIGUE SYNDROME INITIAL FUNCTIONAL ASSESSMENT |
|---|
| CLAIMANT: JOHN MAGEE    CLAIM NUMBER: 640407128904    EMPLOYER: ITT INDUSTRIES, INC. |

### B. EXERCISE REGIMEN/ALTERNATIVE MEDICINE/ RESPONSE/DATE ENDED

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

### C. DATE AND RESULTS OF MOST RECENT LABS: CBC; TSH; LYME; ANA;ETC.

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

### D. RETURN TO WORK/GOALS AND DATE

| | |
|---|---|
| What specific symptoms, deficits, or functional impairments are prohibiting the individual from returning to his/her job? | |
| Please address how the current treatment plan actively addresses the above impairment? | |
| Please provide a prognosis and Estimated date for return to work (Part-time or Full-time | |
| Please specify types of reasonable accommodations and the expected duration that would facilitate a re-entry into the work place | |
| Could this patient currently perform the same job in another department or division of the company? | YES ☐    NO ○ (please explain why not) |
| Could this patient currently perform the same job at a different company? | YES ☐    NO ○ (please explain why not) |
| What other healthcare professionals are actively involved in the care of the patient? Please explain. | YES ☐ (name/address/phone)    NO ○ (please explain why not) |

ML0181

# Appendix 11

Statement by Renee Magee

February 21, 2007

To the People of MetLife,

My name is Renee Magee. John Magee is my husband . We have been married twenty three years and have five extraordinary children (just ask them). I am writing to tell you about John: my husband, their Daddy, our hero.

The man I married had unlimited optimism and vitality. He could make or fix anything mastered any challenge he encountered while we restored our 1820 farmhouse. We actually bought just the land as newlyweds (the house was to be demolished) but we dreamed of saving the house and filling it up with children, which we did. I loved being a stay at home Mom, and John had a bright future at Kodak and a deeply satisfying career.

We were very happy. I had the rare husband who NEVER took a nap, vegged out, or watched sports on TV on weekends. He was too busy playing with the kids (usually outside) or surprising me with some home improvement project I dreamed of for our home.

He taught himself every trade he needed from laying block, brick or stone, to installing a heating system, to tapping our maple tress and boiling sap into syrup.

When I married him I knew I was in good hands, strong hands, for I had married the most honorable man I had ever met. Truthfully, he reminded me of Michael Landon/Charles Ingalls from *Little House on the Prairie*. He was full of heart with old-fashioned values and no problem ever existed for him that hard work and sweat couldn't solve. Even the way he spent his birthday reflected his values... taking a walk in the December air with the dog (and later the children) to the woods on our twenty acres to chop down and split wood for our stove.

My husband's life, my life and our family's life is nothing like it was the first fifteen years of our marriage but one thing that has been constant throughout is his great integrity.

CFS, with all of its symptoms has devastated his body. He is imprisoned to the sofa. He is able to sit so rarely that I am always struck by how handsome he looks when he is upright. The man who relished raising a large family has to miss most of what that involves: going to Mass together, all-county concerts, football and lacrosse games, open houses, coaching summer soccer, and just about everything else that gave him joy and purpose.

Our youngest two children don't even know him healthy. They only know the Daddy who has to lay down almost all day. The Daddy who's  head hurts so much that he has to go to bed before they do many evenings and the Daddy who misses family dinner in the kitchen many nights because he can't make it in from the living room. The older ones ask " How's Daddy?" before

ML0182

# Appendix 11 (cont.)

Statement by Renee Magee

telling anything about their days at school. When they find him on the couch or in bed – that's all they need. He is still magical, just limited.

The hardest part of this illness has been losing his career. As an engineer for Kodak in "Government Systems" he was proud walking by the enormous American Flag in the lobby every day. He was a Quality Manager working on projects he dreamed of as a young man. He took his job most seriously. He was honored to contribute and derived a great deal of satisfaction from his career and the knowledge that he was working hard and performing well.

For a man like John, to have to watch life from a couch or in a darkened room in bed while being in near constant pain is almost unbearable. What is even worse is the knowledge that he can't take care of his family the way he expected to.

Several weeks ago after dinner I took our Kindergartener and dog for a walk to the falls in our village. It was a beautiful night with snow falling around us. Suddenly my five year old son took snow off the railing, made it into a snow ball and threw it off the bridge toward the water saying "I wish Daddy gets better" with his voice trailing. I asked him what he said, but of course he wouldn't say. It couldn't come true if he did.

You can't cure my husband John but you can honor your obligation to him and his family. I urge you to do so. It is the right thing to do.

Respectfully yours,

Renee Herko Magee

ML0183

# Appendix 12

Statement by Judy Woodard

February 10, 2007

To whom it may concern,

I have known John Magee since the early 1990's. I reported directly to John for several years during our respective careers at Eastman Kodak. As his quality technician, I worked closely with him daily. I believe I came to know John very well, and I have always held him in the highest regard. The time I spent working with John remains the high point of my working career. I never before, or since, have worked with anyone who so apparently embodied the essence of human goodness in everything about him.

Over the many years I worked at Kodak I experienced a number of different management styles. I can honestly say that John Magee was a manager of the best sort. John always brought to our projects great knowledge, integrity, and enthusiasm; as well as an intuitive sense of leadership by example. It was impossible not to inherit John's passion for work. He inspired me to be better at my job, gave me a sense of self, and of purpose. He taught me how to love my work.

Every day that I worked for John, we worked as a team. His work ethic was impeccable. He was an outstanding quality engineer- he was enthusiastic about learning every aspect of a project. No job was out of scope or out of reach. He was the first to learn how products were being designed and assembled. John was roll up his sleeves hands on, mechanically inclined, a doer. Obviously, for John, the only way to ensure the quality of a product was to know it intimately. Before we could design testing, we had to be able to build and operate the product.

John's belief that quality should never be compromised made him a valuable and much sought after quality engineer. He wouldn't approve a product for market until he was personally convinced that it met all requirements. To John, that meant extensive learning and even more extensive testing.

John led by doing, and demonstrated almost boundless energy for his work. It was obvious to all who encountered him that John loved his work. His work was a part of his life. He was actively involved at every stage of a project, choosing to extend experimentation and testing into his off-hours. He always had equipment under his arm as he headed for home, and his dedication to a project always provided meaningful results.

People trusted John. I'm quite sure he inspired everyone he worked with through his honesty. He built relationships with customers in order to learn what the customer wanted and needed. They confided in John because they knew he was sincerely interested in delivering what they needed. He built relationships within the project teams by always extending a helping hand beyond his specified role; this was the mark of a true team player. His helped those teams build credibility through his consistent style of open honest communication with team members and with executive management.

Senior management frequently called upon John to investigate quality issues. They could be sure he would meet the challenge, investigate all possible scenarios, and then deliver an honest and unbiased opinion for achieving the best solution.

John shared with me many of the home projects and activities that occupied his non-working time. For most men, being a father and husband with a full time job and an older house to maintain would suffice to take up all their time. For John, as with his work, there was always room for something else to do. The list of hobbies and activities was long. John enjoyed auto mechanics and was always working on restoration of a classic car in his spare time. He built go-carts for his kids. He and his wife remodeled their house from the frame up. The family loves animals, and so there were always house and farm pets to take care of. John became a talented photographer, and recorded all of the family's activities and vacations. Vacations always involved packing the family into the car and heading for places that meant many activities with the kids. At home, the kids were

ML0184

# Appendix 12 (cont.)

Statement by Judy Woodard

encouraged to participate in extracurricular activities, and John was there to support them- music, sports, academic.

I have never known anyone more actively engaged in every aspect of his life than John Magee. Home, work, personal, professional life was met with a passion and a seemingly endless energy for living it.

Regards,

Judith Woodard
2826 Rexford Lane
Cary, NC 27518

ML0185

# Appendix 13

### Statement by Luke Miller



Luke Miller
*Editor, Garden Ideas*

1716 Locust Street
Des Moines, IA 50309-3023
515-284-2069
Fax: 515 284-3697
luke.miller@meredith.com

2/12/07

To Whom it May Concern,

I have known John Magee for more than 30 years. We were high school classmates and remained friends after graduation. I was an attendant at his wedding, a godfather to his first born, and a pair of helping hands when he was doing home improvements. In fact, that's where we really cemented our friendship.

When I lived in Rochester, I regularly came out to John's house to help him with home remodeling and landscaping. That was back in the '80s and early '90s. He never shied away from work and never sat idle by his own choice. His evenings and weekends were filled with chores and projects: refurbishing the house, fixing the family's cars (and those of friends and relatives, too), helping others. Getting him to sit still was never easy; he had too much initiative for that.

John put in long hours at work, spent a great deal of quality time with his family, and filled the rest of his waking hours working around the house after the kids went to bed. He was the farthest thing from lazy that a man can be.

Since developing symptoms of his disease, John's health has deteriorated and he has been unable to work—at the office or at home. It is obvious to me that he has the desire but not the energy. He is a prisoner in his own body. There have been times I have visited the house when he was too tired to see me. About two years ago, I was visiting from Iowa at the same time a mutual friend was visiting from Florida. With two out-of-state friends waiting in his living room, John was too tired to get out of bed or even to receive us upstairs. That's a telling point, if you ask me.

My friend John Magee is an honest man with impeccable character. If he says he can't work, it's the truth. And I'll swear to that in front of God and any court in the land.

Sincerely,

Luke W. Miller
P.O. Box 7164
Des Moines, IA 50309
515/729-3673

ML0186

# Appendix 14

Statement by Robert Cerame

# Robert M. Cerame

President, Cerame Enterprises, Inc.
President, King Cerame Properties, Inc.
President, Florida Edsel Club
Principal, Avon Financial
Florida Notary Public
Partner, Harbor Oaks Property Management
28-year Member, International Edsel Club
Founding Member, The Edsel Club, Inc.

444 Greenleaf Square    •    Port Orange, Fl. 32127
Phone: (386) 304-5651 • email: robcerame @ bellsouth.net

To: MetLife Insurance Company
2/1/2007
Re: John Magee

Gentlemen:

It has come to my attention that there is some difficulty involved in John Magee's claim for disability, due to the lack of testing available for the condition known as CFS. It is unfortunate that knowledge of this disease and its effects are not so easily understood as cancer, strokes, or other more highly publicized problems. However, the difficulties that John faces every day are very real.

I have known John for over 30 years. I have seen him excited over new developments at work, excited over his involvement and participation in projects, happy to be part of a team that would bring a new item to marketability. This is not a person who is staying home to avoid working. This is a guy who I saw rebuild an 1820s farmhouse with no indoor plumbing into a comfortable house for his wife and children, many parts of it with no outside help. This is a guy who worked 50 or 60 hours a week, and would then tear down walls and rebuild them on the weekend. This is a guy who would come home in the winter from working all day and then lay in the snow underneath his car to replace parts so his wife could drive it the next day. Projects that I would hire a team of specialists for; he would look upon as a challenge to do himself. If there is anybody who I ever thought would kill himself by working too much, that is John Magee. Now he has to pay other people to do simple tasks around the house like install cabinets, and do wallpaper. If he is trying to get out of working unfairly, he would still do things at home that nobody else would know about, but he just can't. Do I think he still wants to work? Absolutely! I'm sure he would love nothing more than a day where he would feel like tearing down and rebuilding an entire garage, but that is just not the case. Now he has days where he is not capable of driving to the store.

You don't know me, but if there is anything I abhor, it is people scamming the system; getting something for nothing; and trying to get what they are not entitled to for free. I have no use for people like that and am very vocal in saying so. I also feel that I must be very vocal in stating that this is the farthest thing from the case with John Magee. If there is anybody who would ever want more to be able once again to create, to pour all of their energy into a project, to dedicate themselves fully to a challenge, then I haven't met that person.

Feel free to contact me at any time about this matter. You may also verify any of my own credentials if you like.

Sincerely,

ML0187

# Appendix 15

Statement by Maggie Webb

February 15, 2007

To Whom It May Concern:

My name is Maggie Webb. I have been asked to write on behalf of my Uncle, John Magee, who finds himself fighting for his right to retain his insurance benefits on top of fighting for his life.

My uncle was diagnosed with Chronic Fatigue Syndrome (CFS) more than 10 years ago. He has never been in remission or felt any relief from his pain since his diagnosis. Despite optimistic hopes and prayers, he lives with his disease everyday, as do his five children and wife of twenty-five years.

For the past 10 years of living with the disease, no one could really help Uncle Johnny. We can't take his physical or emotional pain away, and if we could I'm not sure where to start on the list of physical ailments he struggles with day in and day out. Just by moving from a sitting position to a standing position, Uncle Johnny's heart sustains incredible rate changes that cause his blood pressure to decrease in great amounts. He suffers from migraine headaches that actually force his eyes to tremble. He experiences loss of memory and an inability to focus and concentrate daily. But one of the greatest downfalls of this disease is the endless need to feel rested after any amount of sleep, even after days in bed. This is basic human need that, for Uncle Johnny, is never fulfilled.

My Aunt explains to me how the cells in Uncle Johnny's body actually hurt. His hair hurts; breathing hurts; everything hurts. And so does your family when they watch you suffer.

Like any disease, the family is often left confused, saddened, and desperate to relieve your loved one's anguish. Our family suffers from this disease with Uncle Johnny. Family time is limited to the family room where there is a couch for Uncle John to lay on. Forget about walks in the park, family vacations, and any type of family sport. A man, who by all accounts was the most energetic and optimistic father and husband, left as an onlooker to his family's events. A man left in a place where pain is constant and most times not even manageable. A place where your loved ones feel completely helpless. A place that no one wants to know about.

The symptoms and health effects of the disease are probably printed in medical books somewhere for you to read on your own but one thing you won't read is how this disease strips a person of every ounce of integrity that may be left. Integrity, by definition is "a state of being unimpaired, soundness; the quality or condition of being whole of undivided."

There is no room for integrity when Uncle John feels entirely impaired and incapacitated. Quality and condition of being whole seems totally unobtainable. Your physical restrictions reduce the ability to complete even the simplest tasks. And there are the "good days," the days Uncle John takes Vicodin just so he can get up and move around for a short period of time. But these days are limited and unpredictable. The more Vicodin he uses just to get by leaves him feeling even worse the next day.

My Uncle is the quintessential husband, father, and employee. He strives for perfection in every aspect of his life. Sleep used to be unnecessary before CFS. Working on projects for work through the night. Re-building his home from a simple wood frame into a beautifully restored historical landmark is just an example of the ambition this man knew. Promotions and bonuses defined my Uncle's professional career. Then slowly through the years, this debilitating disease crept up with him and forced his work, what he loved to do, out of his life.

The hope of recovery dwindles with each passing year, and with each participation in a CFS

ML0188

# Appendix 14 (cont.)

Statement by Maggie Webb

study that results in and unsuccessful conclusion. The passion for life with once sustained this man fades into the despair and misery of CFS. The disease strikes your mind, your integrity, and your family. At the present time, Uncle John feels immense guilt for various reasons: The inability to hold a job. The sense of failure to be able to provide for your family. Truly the most difficult aspect of dealing with the chronicle illness for him and his family is that my Uncle John blames himself for these faults.

If there is a place for blame, I blame the medical community for not recognizing the lack of progress made to cure or even understand Chronic Fatigue Syndrome. I blame the government for funding many other studies, but ignoring this devastating and complicated disease. What will is take for someone to take notice? How many people and how many families have to suffer? Why is it so difficult for an insurance company to fulfill their obligation for which they were intended?

Sincerely,

Margaret E. Webb

07030800034160080

## ACS, Metlife Disability. Mail Tracking Barcoding.

Tracking Number:



EB205564344US

| | |
|---|---|
| Sender: | John Magee |
| Status: | Scanned |
| Carrier: | Certified |
| Office: | |
| | |
| Comments: | MLAP |

| | |
|---|---|
| Process Date | 3/8/2007 9:04:00 AM |

ML0190

070308F05267

FACSIMILE COVER LETTER FROM:

### David S. Bell, M.D., F.A.A.P.
### P.O. Box 495
### 77 South Main Street
### Lyndonville, New York 14098
### TEL (585) 765-2060   FAX (585) 765-2067

THIS MESSAGE is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any disclosure, copying or distribution of this information is Strictly Prohibited. If you receive this message by error, please notify the sender immediately to arrange for return or destruction of these documents.

Date: _3-8-07_

To: _MeT Life att. Lynn Gray_

Fax Number: _1-800-230-9531_

Re: _Letter - John Magee_
    _clm # 6404 0712 8904_

Number of Pages, including cover letter: _2_

Confidentiality Notice: Confidential Health Information Enclosed
Protected Health Information (PHI) is personal and sensitive information related to a person's health care. It is being faxed to you after appropriate authorization from the patient or under circumstances that did not require patient authorization. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without additional patient consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

ML0191

070308F05267

David S. Bell, M.D.
77 South Main Street
P.O. Box 495
Lyndonville, New York 14098

Telephone: (585) 765-2060

March 2, 2007

To Whom It May Concern:

John Magee had a circulating blood volume done at the University of Rochester by the chromium 51 method. His red blood cell mass was 20.6 mL/Kg (normal 23-28 mL/Kg). His plasm volume was 33.8, leading to a total blood volume of 56.4. The mean plasma volume is 68-70 mL/Kg. This total blood volume is abnormally low and it is due mainly to a contraction of the red blood cell mass. This finding has been initially reported in 1995 in patients who have chronic fatigue syndrome (reference 1). The finding has recently been confirmed with a large NIH study which is currently in press. The confirmation came at a recent conference (reference 2).

The above findings are abnormal and are consistent with severe chronic fatigue syndrome. If you have any specific questions, please do not hesitate to call.

Very truly yours,

David S. Bell, M.D.

DSB:ds
Dictated, not read.

1. Streeten, D. et al, *American Journal of Medical Sciences*, July 2000, Volume 320, #1.
2. Hurwitz, B., "Contracted Red Blood Cell Volume in Chronic Fatigue Syndrome". International Association of Chronic Fatigue Syndrome Conference, January 12, 2007.

ML0192

070307F08808

FACSIMILE COVER LETTER FROM:

**David S. Bell, M.D., F.A.A.P.**
**P.O. Box 495**
**77 South Main Street**
**Lyndonville, New York 14098**
**TEL (585) 765-2060   FAX (585) 765-2067**

THIS MESSAGE is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any disclosure, copying or distribution of this information is Strictly Prohibited. If you receive this message by error, please notify the sender immediately to arrange for return or destruction of these documents.

Date: 3/07/07

To: Met Life - attn Lynn Gray

Fax Number: 1-800-230-9531

Re: Letter - John Magee

CLM# 64040712 8904

Number of Pages, including cover letter: 5

Confidentiality Notice: Confidential Health Information Enclosed
Protected Health Information (PHI) is personal and sensitive information related to a person's health care. It is being faxed to you after appropriate authorization from the patient or under circumstances that did not require patient authorization. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without additional patient consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

ML0193

070307F08808

**David S. Bell MD**
**77 South Main Street**
**Lyndonville, NY 14098**
**585-765-2060**

**John Magee**
**DOB 12/7/59**

To Whom it may concern,

I am writing this report to sumarize the disability of John Magee who is followed in this office for chronic fatigue syndrome (CFS). He was last seen on 3/8/07.

1. The existence of CFS as a valid diagnostic entity.
    There is no question as to the existence of CFS as a valid diagnostic entity. The centers for disease control first issued diagnostic criteria in 1988 [1]. These criteria have been modified several times and the most recent criteria have been published [2] and ambiguities have been clarified [3]. The National Institutes for Health have issues Requests for Applications on chronic fatigue syndrome, further attesting its validity. There have been numerous review on the subject [4].

2. My ability to make the diagnosis of CFS.
    The clinical experience of the clinician in making a diagnosis is always a valid question. I have been involved with this illness since 1985. I have served as a consultant to the Centers for Disease Control, and have served a three year term as chairman of the CFS Advisory Committee of the US Department of Health and Human Services. I have been a board member of the International Association for Chronic Fatigue Syndrome, and have many publications in peer reviewed journals on the subject. A curriculum vitae is available on request.

3. Does John Magee have CFS?
    Mr. Magee was diagnosed with CFS by Dr. Ross, a rheumatologist in 1998. The diagnosis was confirmed by Dr. Benjamin Natalson who had a National Institutes of Health Chronic Fatigue Syndrome Center Grant in 1999. I confirmed the diagnosis of CFS on 9/18/00. He had a typical onset and course and fulfilled the criteria of the CDC for diagnosis [2]. He would also fulfil the recent Canadian consensus criteria [5]. In the six and one half years since diagnosis, there has been no alternative diagnosis that is able to explain Mr. Magee's condition. Specifically I do not see any evidence for a factitious disorder, malingering, primary depression or anxiety disorder, or hypochondriasis. His illness and the inability to work have resulted in a secondary depression at times.

4. Does CFS cause disability?
    CFS does cause disability and this has been documented in several reviews [6, 7] In a recent paper from the Centers for Disease Control, the economic impact of the disability of CFS

ML0194

070307F08808

(not including medical expenses) is $9.1 billion dollars annually, attesting to the magnitude of the disability [8].

### 5. Is Mr. Magee disabled?

When Mr. Magee was first seen in 9/00 he was going to work with marked difficulty. With progression of his symptoms he became unable to work. Activity assessments since then have shown a marked decline in funtional ability. The number of hours of productive activity is the total allowed within a 24 hour period. 10/00 – 9 hours functional activity in a 24 hour period; 11/00 – 10 hrs; 5/02 – 2.25 hrs; 1/03 – 1 hr; 5/1/03 – 4 hours; 7/03 – 1.5 hrs; 8/03 - 3 hrs; 10/03 – 6 hrs; 12/03 – 4 hrs; 2/04 – 2 hrs; 5/04 2 hrs; 7/04 2 hrs; 3/07 – 2 hrs.

In June 2005 SF-36 questionnaire was administered which is the most widely respected instrument of function. Mr. Magee scored in the very disabled range (see report of 6/6/05). His scores were consistent with severe disability seen in CFS [9, 10].

### 6. Disabling symptoms

Mr. Magee's symptoms have been consistent in the years I have seen him. Most recently (3/7/07) he has severe fatigue, memory and concentration difficulties, muscle pain, joint pain, headache, unrefreshing sleep, and post exertional malaise. Post exertional malaise is the worsening of symptoms following activities. On the recent two day exercise test, he rode a stationary bicycle for 15 minutes the first day and slept from noon until 5 pm following the test. There was a marked worsening of symptoms following the second test which persisted severala days.

### 7. Supportive Medical Evidence

Mr. Magee was found to have idiopathic hypovolemia, a reduction in total circulating blood volume, seen in 80% of patients with CFS [11]. This finding was recently confirmed by the Miami erythropoietin study funded by the National Institutes for Health (1/12/2007, International Association for Chronic Fatigue Syndrome meetings). In the study done 9/2000, his red blood cell mass was 15.3 ml/kg, compared to normal values of 23-27 ml/kg. The mechanism of the hypovolemia is currently unknown.

On 2/6/07 Mr. Magee had an abnormal MRI scan of the brain characterized by non-specific periventricular hyperintense white matter signals., This finding has been noted in up to 75% of patients with CFS and only 14% of healthy controls [12, 13]. The cause of this abnormality remains theoretical only.

On 3/6/07 Mr. Magee had a two day exercise test which demonstrated excellent effort. His oxygen uptake at ventilatory threshold was 15.8 ml/kg/min, while a sedentary control person would have a value of 23.6 ml/kg/min. This indicates that his disability is not due to either effort or deconditioning.

He also has a low renin which is abnormal in light of his reduced circulating blood volume.

ML0195

In summary I believe Mr. Magee to be disabled due to chronic fatigue syndrome, a medical illness. It is unlikely that he will experience a significant improvement in the future.

Respectfully submitted,

David S. Bell MD

### References

1.  Holmes G, Kaplan J, Gantz N, al e: **Chronic fatigue syndrome: a working case definition.** *Ann Intern Med* 1988, 108:387-389.

2.  Fukuda K, Straus S, Hickie I, Sharpe M, Dobbins J, Komaroff A, Group ICS: **The chronic fatigue syndrome: a comprehensive approach to its definition and study.** *Ann Intern Med* 1994, 121:953-959.

3.  Reeves W, Lloyd A, Vernon S, Klimas N, Jason L, Bleijenberg G, Evengard B, White P, Nisenbaum R, Unger E: **Identification of ambiguities in the 1994 chronic fatigue syndrome research case definition and recommendations for resolution.** *BMC Health Services Research* 2003, 3:1-25.

4.  Jason L, King C, Frankenberry E, KM. J: **Chronic fatigue syndrome: assessing symptoms and activity level.** *J Clin Psychol* 1999, 55:411-424.

5.  Carruthers B, Jain A, DeMeirlier K, Peterson D, Klimas N, Lerner A, Bested A, Flor-Henry P, Joshi P, Powles ACP *et al*: **Myalgic encephalomyelitis/chronic fatigue syndrome: Clinical working case definition. diagnostic and treatment protocols.** *J Chronic Fatigue Syndrome* 2003, 11(1):1-12.

6.  Ross S, Estok R, Frame D, Stone L, Ludensky V, Levine C: **Disability and chronic fatigue syndrome: a focus on function.** *Arch Intern Med* 2004, 164(10):1098-1107.

7.  Anderson J, Ferrans C: **The quality of life of persons with chronic fatigue syndrome.** *J Nerv Ment Dis* 1997, 185:359-367.

8.  Reynolds K, S V, Bouchery E, Reeves W: **The economic impact of chronic fatigue syndrome.** 2004.

9.  Buchwald D, Pearlman T, Umali J, Schmaling K, Katon W: **Functional status in patients with chronic fatigue syndrome, other fatiguing illnesses, and healthy individuals.** *Am J Med* 1996, 171:364-370.

10. Komaroff A, Fagioli L, Doolittle T, Gandek B, Gleit M, Guerriero T, Kornish J, Ware N, Ware J, Bates D: **Health status in patients with the chronic fatigue syndrome and in general population and disease comparison groups.** *Am J Med* 1996, 101:281-290.

ML0196

070307F08808

11.    Streeten D, Thomas D, Bell D: **The roles of orthostatic hypotension, orthostatic tachycardia, and subnormal erythrocyte volume in the pathogenesis of the chronic fatigue syndrome.** *Am J Med Sci* 2000, **320**(1):1-8.

12.    Schwartz R, Garada B, Komaroff A, Tice H, Gleit M, Jolesz F, Holman B: **Detection of intracranial abnormalities in patients with chronic fatigue syndrome: comparison of MR imaging and SPECT.** *American Journal of Roentgenology* 1994, **162**:935-941.

13.    Schwartz R, Komaroff A, Garada B, Gleit M, Doolittle T, Bates D, Vasile R, Holman B: **SPECT imaging of the brain: comparison of findings in patients with the chronic fatigue syndrome, AIDS dementia complex, and major unipolar depression.** *American Journal of Roentgenology* 1994, **162**:943-951.

ML0197

**Metropolitan Life Insurance Company**

**MetLife®**

**MetLife Disability**
**PO Box 14592**
**Lexington, KY 40511**

February 5, 2007

John Magee
71 Ontario Street
Honeoye Falls, NY  14472-1123

Re:        Long Term Disability
Claim No:   640407128904
Group:      ITT Industries
Group No:   303299

Dear Mr. Magee:

This will supplement our telephone conversation this morning in which you advised MetLife to refrain from deciding this appeal until after you have had an opportunity to submit additional information.  Per your request, an extension of 30 days has been granted.  As discussed, please provide any medical information from all of your Doctors from   May 2006 to the present with regard to all of your conditions that are preventing you from working.

 Any information relating to your claim that is deemed appropriate for us to give your appeal proper consideration should be submitted by March 9, 2007.

Once the complete appeal has been submitted, your claim will be referred for an independent claim review.  No action will be taken until March 9, 2007 unless our office is advised that that you have submitted all information to be considered for the appeal.

ML0198

Once the requested information is received or the 30 days has expired we will continue with our review of your claim. Upon receipt of additional medical information, please be advised that we will have an additional 45 days to review it.

Should you have any questions, please contact a customer service representative at our toll free number, 1-800-300-4296. The representatives at our customer response center can assist you with most claim questions.

Sincerely,


Joanne Martin
Procedure Analyst
Metropolitan Life Insurance Company
1-800-300-4296

John Magee
71 Ontario Street
Honeoye Falls, NY 14472

01/03/07

MetLife
PO Box 14590
Lexington, KY 40511-4590

RE: ITT Industries, Inc.
Long Term Disability
Claim No.: 640407128904
Group No.: 303299
Emp ID No.: 620820

To Whom It May Concern:

This letter is in reference to a document that I have received from MetLife dated July 20, 2006 regarding the termination of my long term disability benefits.

I am in need of a copy of the Long Term disability document with which this claim is being judged under. I have been told in the past that I should be able to procure this document from the Eastman Kodak Company. I have sent multiple e-mails to WW-HRSevices@Kodak.com (and received confirmation of the delivery of these e-mails) requesting the document, but have not received any responses from Kodak. I have also called HR at Kodak (using the number supplied to me in the MetLife letter) and have been told that since I no longer work for Kodak, they will not honor my request. I have relayed this information to my claim representative at MetLife (Peter Knoth) who suggested I call Kodak back. I did repeat my call to Kodak HR on 12/15/06 and was told that it would be sent to me within 5 working days. I have yet to receive the LTD document from them. I also tried calling ITT for a copy of the LTD document (which was carried over from Kodak) but was sent the ITT plan instead. In order for me to properly appeal this denial, I must have the exact wording on the LTD document. I would appreciated any help that MetLife could provide in facilitating my receiving the Eastman Kodak Long Term Disability document that my disability has been judged against.

It has also come to my attention that the my appeal/claim may already be undergoing review through some misunderstanding. As I hope to provide much more information for the appeal, I would appreciate it if the review process were not started until after all my information has been submitted.

I would also like to request an extension to the final date for the appeal (which I believe to be January 20, 2006). Due to a recent death of a close family member, lack of the LTD document and due to the cognitive limitations caused by this disease I do not believe that I shall have all of my testing results and written work appropriately ready for the date of January 20. I believe that an extra month should more that suffice. As I am sure that MetLife is interested in a just resolution in this case, I do hope that my request will be granted.

I appreciate your understanding and consideration. Thank you.

John Magee

(585) 624-9306

ML0200

ML0201



John Magee
71 Ontario Street
Honeoye Falls, NY 14472

01/03/07

MetLife
PO Box 14590
Lexington, KY 40511-4590

To Whom It May Concern:

This letter is in reference to a document that I have
regarding the termination of my long term disabilit

I am in need of a copy of the Long Term disability
under. I have been told in the past that I should be
Kodak Company. I have sent multiple e-mails to
confirmation of the delivery of these e-mails) req
responses from Kodak. I have also called HR at
MetLife letter) and have been told that since I no
request. I have relayed this information to my cl
suggested I call Kodak back. I did repeat my cal
be sent to me within 5 working days. I have yet
calling ITT for a copy of the LTD document (w
ITT plan instead. In order for me to properly ap
LTD document. I would appreciated any help
the Eastman Kodak Long Term Disability doc

It has also come to my attention that the my a
some misunderstanding. As I hope to provide
appreciate it if the review process were not s

I would also like to request an extension to t
20, 2006). Due to a recent death of a close fi
cognitive limitations caused by this disease
and written work appropriately ready for th
more that suffice. As I am sure that MetLif
my request will be granted.

I appreciate your understanding and consi

ML0202

ML0203

07011110000276

ACS, Metlife Disability. Mail Tracking Barcoding.

Tracking Number:



700411600002<br>47137456

| Sender: | Loretta Wheatly |
| --- | --- |
| Status: | Scanned |
| Carrier: | Certified |
| Office: | |

Comments:     MLDM

Process Date     1/11/2007 9:17:21 AM

ML0204

Metropolitan Life Insurance Company

**MetLife**®

MetLife Disability
PO Box 14592
Lexington, KY 40511-4592

December 28, 2006

John Magee
71 Ontario Street
Honeoye Falls, NY  14472-1123

Claim #: 640407128904
Employer: ITT Corporation
Report #: 303299

Dear Mr. Magee,

We have received your appeal request for review of your disability claim.  Your claim has been referred for an independent claim review.

We will evaluate the documentation and advise you in writing within 45 days of our determination.  If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing.

Please contact a customer service representative at the toll-free number listed below if you have questions or need additional assistance

Sincerely,

Met Disability
Appeals Unit
1-800-300-4296

John Magee
71 Ontario Street
Honeoye Falls, NY 14472

12/06/06

MetLife
PO Box 14590
Lexington, KY 40511-4590

RE: ITT Industries, Inc.
Long Term Disability
Claim No.: 640407128904
Group No.: 303299
Emp ID No.: 620820

To Whom It May Concern:

This letter is in reference to a document that I have received from MetLife dated July 20, 2006 regarding the termination of my long term disability benefits.

I would like to request a copy of any documents, records or other information that has either come to light or been added to my file since my last request of August 3, 2006 that might be relevant to my claim.

I would would also like to request (again, as offered in aforementioned letter) that MetLife "identify any medical or vocational expert(s) whose advice was obtained in connection with ... [my] claim" that may have been gather after my last request of 8/3/06.

In addition I would like to request a copy of the Eastman Kodak long term disability (LTD) plan that MetLife based the denial of my claim on. I have tried to procure this from both Eastman Kodak and from ITT Industries, but since I was technically transferred from Kodak to ITT, Kodak will not supply it, and my requests to ITT have gone unanswered (I don't believe that ITT actually has a copy to send).

Last but not least, I would like to request from MetLife for a definition as to what would constitute sufficient objective evidence to confirm my diagnosis of Chronic Fatigue Syndrome and the functional impairment that leads to my disability. Even with the current public awareness campaign being waged by the CDC, I cannot find any objective diagnostic test that is suggested for disability confirmation.

As the final date for my appeal is drawing near, I would ask for your prompt attention to this matter. Thank you.

John Magee
(585) 674-9306

061107F07630

Metropolitan Life Insurance Company

**MetLife®**

MetLife Disability
Offset Recovery Unit
P.O. Box 6171
Utica, NY 13504-6171

November 7, 2006

FINAL REQUEST

John Magee
71 Ontario St
Honeoye Falls, NY 14472-1123

RE:   Long Term Disability
      Claim No.:    640407128904
      Group No.:    303299

Dear Mr. Magee,

We are contacting you in regard to the outstanding overpayment balance in the amount of $16,831.21 due and owing to MetLife and the ITT Corporation Group Plan. This amount remains due and owing and must be repaid immediately to MetLife as Claims Administrator of the Group Plan.

This letter is final demand for either lump sum reimbursement or a monthly installment agreement. Please keep in mind that we are not computing interest due at this time. If a lump sum repayment is not possible at this time, we are willing to consider a **reasonable installment arrangement.**

You should understand that you have been overpaid employee welfare plan benefits, monies to which you are not legally entitled. These overpaid benefits necessarily reduce the assets of the plan and the cost of such is passed on to all plan participants. If MetLife were to allow you to retain the overpaid plan benefits, we would not be treating all plan beneficiaries fairly. It is necessary that you contact the undersigned immediately to arrange to repay the monies.

Should you fail to reply to this letter by November 28, 2006, we will be referring this overpayment to a collection agency to commence collection efforts against you for the recovery of the adjusted plan benefits due the Plan and MetLife.

We urge you to contact us at the number listed below. This matter is on an urgent status and requires your prompt attention.

Sincerely,

*Christine Mielnicki*

Christine Mielnicki
Overpayment Recovery Unit
Phone: (800) 300-4296
Fax: (570) 686-2182
E-mail: cmielnicki@metlife.com

ML0207



# OCCUDATA, INC.
### Social Security Disability Specialists

September 15, 2006

Financial Index for #640407128904

Mr. Ed Herrin
MetLife Disability
c/o ACS
P. O. Box 14590
Lexington, KY  40511-4590

        Re:  Claimant      :  John C. Magee
             Our File No.  :  OC12945NY

## CLOSURE REPORT

Dear Mr. Herrin:

We have been advised that the withheld attorney fees in the sum of
$ 5,250.00 have recently been paid to the claimant's dependents. As
this should resolve all of the open items that we are aware of with
this case, we will now close our file.  We enjoyed working with you
on this claim, particularly since the result was successful.  If we
can assist you with any other cases, please do not hesitate to let
us know.

Submitted by:

OCCUDATA, INC.

Anne H. Marley
Vice President

AHM/axb

5700 Broadmoor St., Ste. 310 • Mission, KS 66202-2405 • (913) 262-6555 • FAX (913) 262-4066
Email: dibrep@occudata.com      Website: www.occudata.com

ML0208



Metropolitan Life Insurance Company

**MetLife®**

**MetLife Disability**
**PO Box 14590**
**Lexington, KY  40511-4590**

August 15, 2006

John Magee
71 Ontario St.
Honeoye Falls, NY 14472-1123

Re:  **ITT Corporation**
     **Long Term Disability**
     **Claim No.:    640407128904**
     **Group No.:    303299**

Dear Mr. Magee:

This letter and the enclosed contents are in response to your request dated August 3, 2006 to receive copies of material in your disability claim file.

Pursuant to that request, enclosed please find a copy of your complete claim file for Long Term Disability.

If you have any questions regarding this letter or the material included please contact the undersigned.  The enclosed material contains confidential personal information that is protected by law.  If you are not the intended recipient please immediately contact Charlotte Anderson-Bedford, Manager, Privacy and Legislative Compliance at (212) 578-4625 to arrange for return of this material to MetLife.

Sincerely,

Peter Knoth
Case Management Specialist
MetLife DisAbility
1-800-300-4296 – Phone
1-800-230-9531 – Fax

Enclosure:

ML0209

John Magee
71 Ontario Street
Honeoye Falls, NY 14472

August 3, 2006

MetLife
PO Box 14590
Lexington, KY 40511-4590

RE: ITT Industries, Inc.
Long Term Disability
Claim No.: 640407128904
Group No.: 303299
Emp ID No.: 620820

To Whom It May Concern:

This letter is in reference to a document that I have received from MetLife dated July 20, 2006 regarding the termination of my long term disability benefits.

As offered in said letter, I would like to "... request a copy of the documents, records, or other information ...[you] have that ... [is] relevant to ... [my] claim.

I would would also like to request (again, as offered in aforementioned letter) that MetLife "identify any medical or vocational expert(s) whose advice was obtained in connection with ... [my] claim.

As I am appealing this decision, I would ask for your prompt attention to this matter. Thank you.

John Magee

ML0210

Metropolitan Life Insurance Company
**MetLife** Disability, PO Box 14590, Lexington KY 40511-4590
**Phone:** 1-800-300-4296        **Fax:** 1-800-230-9531

# MetLife

# FAX

| **To:** | Linda Tome | **From:** | Peter R Knoth |
|---|---|---|---|
| **Fax:** | (585) 269-5611 | **Pages:** | 7 |
| **Date:** | 07/25/2006 | **Claim #:** | 640407128904 |
| | | **SS#:** | |
| | | **DOB:** | 12/07/1959 |

**Re:**    Claim for John Magee

*THIS COVER SHEET SHOULD BE RETURNED WITH ANY CORRESPONDENCE PROVIDED TO MetLife. FAILURE TO PROVIDE THE CLAIM NUMBER, AND\OR SOCIAL SECURITY NUMBER AND DATE OF BIRTH WILL CAUSE A DELAY IN THE HANDLING OF THE INFORMATION PROVIDED TO MetLife .*

**Comments:** Dear Linda,

Attached is a copy of John Magee's Social Security Disability award letter.

Sincerely,
Peter Knoth

The information contained in the following pages is confidential and intended only for the individual named above. ANY OTHER USE, DISSEMINATION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED AND IS A TORTUOUS INTERFERENCE WITH OUR CONFIDENTIAL BUSINESS RELATIONSHIPS. If this document was erroneously sent to you, please notify us immediately at the number listed above and then destroy this document.

ML0211

Financial Index for #640407128904

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Award

RECEIVED

APR 1 0 2006

OCCUDATA, INC.

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  April 8, 2006
Claim Number:  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HA

JOHN C MAGEE JR
71 ONTARIO ST
HONEOYE FALLS, NY 14472

You are entitled to monthly disability benefits beginning June 2004.

**The Date You Became Disabled**

We found that you became disabled under our rules on December 12, 2003.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits.  For these reasons, your first month of entitlement to benefits is June 2004.

**What We Will Pay And When**

- You will receive $36,924.00 around April 14, 2006.

- This is the money you are due for June 2004 through March 2006.

- Your next payment of $1,997.00, which is for April 2006, will be received on or about the second Wednesday of May 2006.

- After that you will receive $1,997.00 on or about the second Wednesday of each month.

- These and any future payments will go to the financial institution you selected.  Please let us know if you change your mailing address, so we can send you letters directly.

- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on your date of birth.

See Next Page

ML0212

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HA                                           Page 2 of 6

## Your Benefits

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| June | 2004 | $1,868.70 | Entitlement began |
| December | 2004 | $1,919.10 | Cost-of-living adjustment |
| December | 2005 | $1,997.70 | Cost-of-living adjustment |

## Information About Medicare

You are entitled to medicare hospital and medical insurance beginning June 2006.

We will send you a Medicare card. You should take this card with you when you need medical care. If you need medical care before receiving the card and your coverage has already begun, use this letter as proof that you are covered by Medicare.

If you do not want medical insurance, please complete the enclosed card and return it to us in the envelope we have provided. You will need to do this by the date shown on the card. If you decide you do not want the insurance, we will return any premiums that you have paid.

## Information About Representative's Fees

We have approved the fee agreement between you and your representative.

Your past-due benefits are $42,224.00 for June 2004 through March 2006. Under the fee agreement, the representative cannot charge you more than $5,300.00 for his or her work. The amount of the fee does not include any out-of-pocket expenses (for example, costs to get copies of doctors' or hospitals' reports). This is a matter between you and the representative.

## How To Ask Us To Review The Determination On The Fee Amount

You, the representative or the person who decided your case can ask us to review the amount of the fee we say the representative can charge.

If you think the amount of the fee is too high, write us within 15 days from the day you get this letter. Tell us that you disagree with the amount of the fee and give your reasons. Send your request to this address:

Social Security Administration
Office of Hearings and Appeals
Attorney Fee Branch
5107 Leesburg Pike
Falls Church, Virginia 22041-3255

ML0213

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HA                                         Page 3 of 6

The representative also has 15 days to write us if he or she thinks the amount of the fee is too low.

If we do not hear from you or the representative, we will assume you both agree with the amount of the fee shown.

### Information About Past-Due Benefits Withheld To Pay A Representative

Because of the law, we usually withhold 25 percent of the total past-due benefits to pay an approved representative's fee. We withheld $5,300.00 from your past-due benefits to pay the representative.

We are paying the representative from the benefits we withheld. Therefore, we must collect a service charge from him or her. The service charge is 6.3 percent of the fee amount we pay, but not more than $75, which is the most we can collect in each case under the law. We will subtract the service charge from the amount payable to the representative.

The representative cannot ask you to pay for the service charge. If the representative disagrees with the amount of the service charge, he or she must write to the address shown at the top of this letter. The representative must tell us why he or she disagrees within 15 days from the day he or she gets this letter.

### Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

### Your Responsibilities

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "What You Need To Know When You Get Disability Benefits". It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

A provider of employment or vocational rehabilitation services may contact you about getting help to go to work. The provider may be a State vocational rehabilitation agency or a provider under contract with the Social Security Administration.

ML0214

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HA                                    Page 4 of 6

If you go to work, special rules allow us to continue your cash payments and
health care coverage. For more information about how work and earnings affect
disability benefits, call or visit any Social Security office and ask for the following
publications:

- Social Security - Working While Disabled...How We Can Help (SSA
  Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication
  No. 05-10052).

**Other Information**

We are sending a copy of this notice to JEAN C OWEN.

**Do You Disagree With The Decision?**

You have already been notified of your appeal rights regarding the decision made
by the Administrative Law Judge and what you must do to have that decision
reexamined. If you believe that any other determination made by us in carrying
out the Administrative Law Judge decision is incorrect, you may also request
that part of your case be reexamined.

If you want this reconsideration, you may request it through any Social Security
office. If additional evidence is available, you should submit it with your
request. We will review your case and consider any new facts you have. A
person who did not make the first decision will decide your case. We will correct
any mistakes. We will review those parts of the decision which you believe are
wrong and will look at any new facts you have. We may also review those parts
which you believe are correct and may make them unfavorable or less favorable
to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got
  this letter 5 days after the date on it unless you show us that you did not
  get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an
  appeal.

- You have to ask for an appeal in writing. We will ask you to sign a Form
  SSA-561-U2, called "Request for Reconsideration". Contact one of our
  offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made
on Your Social Security Claim". It contains more information about the appeal.

**Things To Remember For The Future**

Doctors and other trained staff decided that you are disabled under our rules.
But, this decision must be reviewed at least once every 3 years. We will send
you a letter before we start the review. Based on that review, your benefits will
continue if you are still disabled, but will end if you are no longer disabled.

ML0215

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HA                                          Page 5 of 6

Please tell us if there is a change in the mailing address and/or direct deposit information. We need this information to make sure payments are deposited timely and important notices regarding your payments reach you.

**If You Have Any Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-585-232-3890. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

> SOCIAL SECURITY
> ROOM 500
> 100 STATE ST
> ROCHESTER, NY 14614

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Jo Anne B. Barnhart*

Jo Anne B. Barnhart
Commissioner
of Social Security

ML0216

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HA                                      Page 6 of 6

# PAYMENT SUMMARY

**Your Payment Of $36,924.00**

Here is how we figured your
first payment:

Benefits due for June 2004
through March 2006
including any cost of living increase,
less monthly rounding of benefits    . . . . . . . . . . . . . . . . . . . . . . . .$42,224.00

Amount we subtracted because of

- money to pay
  your representative    . . . . . . . . . . . . . . . . . . . . . . . . . .    5,300.00

This equals the amount of
your first payment    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$36,924.00

**Your Regular Monthly Payment**

Here is how we figured your
regular monthly payment effective April 2006:

You are entitled to a monthly benefit of    . . . . . . . . . . . . . . . . . . . .$ 1,997.70

Amount we subtracted because of

- rounding (we must round down to
  a whole dollar)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    .70

This equals the amount of
your regular monthly payment    . . . . . . . . . . . . . . . . . . . . . . . . . . .$ 1,997.00

ML0217



Metropolitan Life Insurance Company

**MetLife**®

MetLife Disability
PO Box 14590
Lexington, KY 40511-4590

July 20, 2006

John Magee
71 Ontario St.
Honeoye Falls, NY 14472-1123

RE: ITT Industries, Inc.
Long Term Disability
Claim No.: 640407128904
Group No.: 303299
Emp ID No.: 620820

Dear Mr. Magee:

This letter is in reference to your claim for long term disability benefits under the ITT
Industries, Inc.'s Group Plan.

Based upon a thorough review of all medical information contained in your claim file, we
have determined you no longer qualify for long term disability benefits.

The ITT LTD Plan (formally Eastman Kodak Plan) under which you are covered
stipulates that a claimant is considered disabled for the purpose of the Plan if the claimant
is totally and continuously unable to engage in any substantial gainful work (except
Company approved rehabilitative employment) for which the claimant is or becomes,
reasonably qualified by education, training or experience (page 194 - Kodak Employee
Handbook)

According to your plan in order to continue to receive benefits you must be totally
incapable of performing any occupation as defined above.

Please be advised ongoing medical information is required at various points during a
disability in order to substantiate the continued existence of a disabling condition as
defined in the plan.

ML0218

D. Dennis Payne, Jr., M.D. – Board Certified Internal Medicine and Board Certified Rheumatology, completed a Physician File Review (PFR). The PFR concluded that the medical information on file no longer supports a severity of impairment that precludes you from performing your job as a program assurance manager. The Physician File Review stated you are capable of performing unrestricted work duties and found there are no restrictions or limitations that are supported in the available medical information on file. The PFR concluded your diagnosis of Chronic Fatigue Syndrome is based entirely upon subjective symptomatology without any objective findings on examination, laboratory testing, imaging data, or other specific objective studies used to evaluate conventional disease.

A copy of the Physician File Review was sent to David S. Bell, M.D. for comment. Dr. Bell responded and stated he did not feel the PFR had an understanding of the diagnosis of Chronic Fatigue Syndrome. Dr. Bell's response was sent to the Dr. Payne for review to determine if Dr. Bell's statement changed his opinion of the PFR. Dr. Payne responded and stated that Dr. Bell's response did not change his opinion because Dr. Bell did not submit any additional clinical evidence to support his opinion. Dr. Payne stated your condition is a syndrome, as with a well-defined illness or disease, there must be objective measures to support functional restrictions or limitations before limitations can be placed on an individual.

Therefore, based on Dr. Payne's file review and the lack of clinical evidence to support an impairment, medical no longer supports the existence of a totally disabling condition preventing you from performing any occupation you are qualified for based on your education, training or experience. Lacking from your file is clinical evidence such as office visit notes and physical exam findings to support an ongoing severity of impairment. Therefore, under the terms of the plan, your long term disability benefits are terminated effective August 31, 2006.

Because your claim was denied in whole or in part, you may appeal this decision by sending a written request for appeal to:

MetLife
Attention: Appeals Unit
PO Box 14592
Lexington, KY 40511-4592

within 180 days after you receive this denial letter. Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration. Upon request, and free of charge, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim. Additionally, upon request MetLife will identify any medical or vocational expert(s) whose advice was obtained in connection with your claim. The review of your claim will take into account all

information submitted by you, regardless of whether the information was submitted in connection with your initial claim for benefits. Moreover, the review of your claim will be conducted by an individual who was not involved in the initial claim denial, and who is not the subordinate of any individual who made the initial claim denial. The review will not afford any deference to the initial claim denial.

MetLife will evaluate all the information and advise you of our determination of your appeal within 45 days after we receive your written request for appeal. If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing. In the event your appeal is denied in whole or in part, you will have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

If you wish to obtain a copy of the LTD Plan Document you may call Kodak's Benefit Information office at 1-866-308-4576 or e-mail at ww-hrservices@kodak.com. You will be provided with a copy of the document free of charge.

Sincerely,

Peter Knoth
Case Management Specialist
MetLife Disability
1-800-300-4296 – Phone
1-800-230-9531 – Fax

Enclosure

ML0220

Metropolitan Life Insurance Company

**MetLife  Disability, PO Box 14592, Lexington KY 40511-4592**
Fax:  1-800-230-9531

# **MetLife**

## MetLife Disability Appeal Request Form

*Important:  This form must be returned with a request for an appeal review.*

**Claim #:  640407128904**

**Employee Name:**  JOHN MAGEE

**Employer:**  ITT CORPORATION

**Date:** _____

**Report #:**  303299

### Request for Claim Review

**Instructions:**  This form should be submitted with any request for a review of our claim decision.  You may use the space below to indicate why you believe our claim determination was incorrect.  You may attach additional pages or information, if it is pertinent to your request.

_____

_____

_____

_____

_____

ML0221

Metropolitan Life Insurance Company

**MetLife®**

**MetLife Disability**
**Offset Recovery Unit**
P.O. Box 8171
Utica, NY 13504-8171

July 18, 2006

John Magee
71 Ontario St
Honeoye Falls, NY 14472-1123

RE:  Long Term Disability
   Claim No.:  640407128904
   Group No.:  303299

Dear Mr. Magee,

We are writing in reference to your claim for Long Term Disability benefits.

The current balance of the overpayment is in the amount of $18,006.55. Please be advised your payment is due.

Please send a check or money order made payable to MetLife. To ensure proper crediting of your claim, please be sure to include your claim number on the refund check.

*If payment has been sent, please disregard this notice and allow 10 days to process your refund.*

Thank you for your anticipated cooperation in resolving this matter.

Sincerely,

Christine Mielnicki
Overpayment Recovery Unit
Phone: (800) 300-4296
Fax: (570) 686-2182
E-mail: cmielnicki@metlife.com

ML0222

060615F08344

June 6, 2006

NMR#: **D56527.02**



## Network Medical Review
### C O M P A N Y

## FAX TRANSMITTAL

**DATE:**  JUN 1 5 2006

**TO:**  MICHELE MCCANN
METLIFE INSURANCE COMPANY

**FAX#:**  315-792-1740
**PHONE#:**  315-792-2365  **EXT.**

**FROM:**  KAREN STANDKE

**FAX#:**  815-399-5437

**PHONE#:**  815-399-5180
**TOLL FREE:**  888-388-1667

**PAGES:**  3 (NMR)

**RE:**  JOHN MAGEE
**CLAIM#:**  640407128904

---

**COMMENTS:**

The following is the report you requested on the above named claimant. An original will be sent to you through the mail.

If you have any questions or concerns, please contact our office.

Thank You

*The information contained in this facsimile message is intended for the personal and confidential use of the designated recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, and has received this document in error, Please notify me immediately by telephone so that the return of the document can be arranged.*

*Providers of Evidence-Based Medical Reports*
8778 Mill Road        Rockford, IL 61108
Telephone 815/399-5180 or 888/388-1667        Fax 815/399-5437

ML0223



060615F08344



*Elite Physicians®, Ltd.*

A Subsidiary of
**NMR**

*Providers of
Evidence-Based
Medical Reports*

June 15, 2006

Ms. Michele McCann
Metlife Insurance
5950 Airport Road
Oriskany, NY 13424

RE:              **John Magee**
CLAIM #:    640407128904
SS #:           088544213
NMR #:       D56527.02

Dear Ms. McCann,

Thank you for submitting additional information.

**RECORDS PROVIDED FOR REVIEW:**

PROG NOTES     Dr. Bell                    4/10/06            1-2

**RHEUMATOLOGY ASSESSMENT:** A thorough review of the additional submitted medical information has been completed.

This is an addendum to a medical review in regards to a long-term disability determination on Mr. Magee. Specifically, the case is being reviewed in regards to the diagnosis of rheumatic disease.

Please see my initial review dated 5/3/2006 for a complete description of the reported findings.

Additional Data Reviewed: In addition to the medical records already reviewed, there is a letter from Dr. David S. Bell in response to my report of 5/3/06. No additional objective medical findings are mentioned in regards to Mr. Magee. The letter specifically mentions the entity chronic fatigue syndrome as an illness and the fact that I may not aware of its presence.

**TELECONFERENCE:** A call was placed to Dr. Bell's office on 6/13/06 at 2:30 pm EST and again at 4:00 pm. I was unable to discuss the case with Dr. Bell as he was out of the office at that time.

*6778 Mill Road
Rockford, Illinois 61108*

*Phone: 815-399-5180
Fax: 815-399-5437*

*E-Mail:
info@elitephysicians.com*

*Visit our website
www.nmrco.com*



ACCREDITED
INDEPENDENT REVIEW
ORGANIZATION

ML0224



RE: John Magee                                        NMR#: D56527.02
Page 2                                                   June 15, 2006

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

1.  **Please review Dr. Bell's response to your physician file review, and determine if the additional information changes your opinion. If Dr. Bill's response does not change your opinion, please comment on what is lacking from the file to support a severity of impairment that prevents Mr. Magee from working.**

The response letter from Dr. Bell does not contain any additional information regarding the objective findings of any degree of disability present in Mr. Magee. The letter is in regard to my assumed lack of knowledge or acceptance of the diagnosis of chronic fatigue syndrome. The diagnosis of chronic fatigue syndrome is generally accepted in the medical literature and that acceptance is true in the opinion of this reviewer. It should be noted, however, that this diagnosis is a syndrome (constellation of symptoms) rather than an illness or disease as a result of there being no histopathophysiological correlate specific for the condition not present in controls. Further, it should be noted that even with a syndrome, as with a well defined illness or disease, there must be objective measures that support functional restrictions or limitations before limitations can placed on an individual. Therefore, my opinion in this review does not change from my previous report of 5/3/06.

This review is based solely upon objective medical records presented to me. I have never examined, evaluated, or followed Mr. Magee nor has there ever been a doctor-patient relationship between myself and Mr. Magee.

Sincerely,

D. Dennis Payne, Jr., M.D.
Board Certified Internal Medicine
Board Certified Rheumatology
Licensed in State of NC # 35459

060612013947



JOHN C MAGEE JR.
71 ONTARIO ST.
HONEOYE FALLS, NY 14472

190

DATE June 5 '06

.ife®

PAY TO THE
ORDER OF    Metlife  426160056    $ 32,744 93

thirty two thousand seven hundred forty four 93/100 DOLLARS

M&T Bank
Manufacturers and Traders Trust Company
Honeoye Falls Office

MEMO  640407128904

X058

⑆022000046⑆    983355064⑈0190

RE:    Long Term Disability
       Claim No.:    640407128904
       Group No.    303299

ML0226



# OCCUDATA, INC.

Social Security Disability Specialists

June 1, 2006

**Financial Index for #640407128904**

Mr. Ed Herrin
MetLife Disability
c/o ACS
P. O. Box 14590
Lexington, KY  40511-4590

     Re:  Claimant    :   John C. Magee, Jr.
         Our File No.  :   OC12945NY

## STATUS REPORT

Dear Mr. Herrin:

In order to determine the relevant financial information regarding the above-referenced claimant's award of Social Security disability benefits, we have obtained an award certificate.  Enclosed you will find a copy of said report.

To assist you in interpreting the enclosed information, we have prepared the following summary:

### DEPENDENT'S BENEFITS

| | |
|---|---:|
| Total retroactive benefits payable thru 04/06 | $ 3,668.00 |
| Attorneys' fees withheld | 875.00 |
| Net retroactive benefits | 2,792.50 |
| Date of entitlement to cash benefits | 06/04 |
| Gross monthly benefit effective 06/04 | 155.00 |
| Gross monthly benefit effective 12/04 | 159.00 |
| Gross monthly benefit effective 12/05 | 166.00 |

The above-referenced benefits are payable to the claimant's wife and each of his five dependents.

The sum of $875.00 has automatically been withheld from each dependent's retroactive benefits in order to pay attorney fees.  A letter has been sent to the Social Security Administration asking that these fees be released to the dependents, since we have already received the maximum fee for this case.

5700 Broadmoor St., Ste. 310 • Mission, KS 66202-2405 • (913) 262-6555 • FAX (913) 262-4066
Email: dibrep@occudata.com        Website: www.occudata.com

ML0227



## OCCUDATA, INC.

Social Security Disability Specialists

We will be in contact with both the Administration and the claimant regarding the withheld attorney fees. We will notify you when advised these fees have been released. If you have any questions or need any further information regarding the award certificate, please do not hesitate to contact me.

Submitted,

OCCUDATA, INC.

Anne H. Marley
Vice President

AHM/axb

Enclosures:  Copy of Award Certificates

- 2 -

ML0228

Financial Index for #640407128904

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Award

RECEIVED

MAY 3 0 2006

OCCUDATA, INC.

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  May 27, 2006
Claim Number:  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HB2

RENEE HERKO MAGEE
71 ONTARIO ST
HONEOYE FALLS, NY 14472

You are entitled to monthly spouse's benefits beginning June 2004.

## What We Will Pay And When

- You will receive $2,792.50 around June 2, 2006.

- This is the money you are due for June 2004 through April 2006.

- Your next payment of $166.00, which is for May 2006, will be received on or about the second Wednesday of June 2006.

- After that you will receive $166.00 on or about the second Wednesday of each month.

- These and any future payments will go to the financial institution you selected.  Please let us know if you change your mailing address, so we can send you letters directly.

- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on JOHN C MAGEE JR's date of birth.

## Your Benefits

We raised your monthly benefit amount beginning December 2004 and again in December 2005 because the cost of living increased.

## Work And Earnings Affect Payments

The monthly earnings test applies only to 1 year.  That year is the first year a beneficiary has a non-work month after entitlement to Social Security benefits. Our records show that you had or will have at least one non-work month in 2004. Therefore, we will pay you benefits for years after 2004 based on the total amount you earn each year.

See Next Page

ML0229

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HB2                                                    Page 2 of 4

## Information About Representative's Fees

When a representative wants to charge for helping with a Social Security claim, we must first approve the fee. We usually withhold 25 percent of past due benefits in order to pay the approved representative's fee.

Because a representative helped with this claim, we withheld $875.50 from your first check.

If the representative wants to charge a fee, a request to have it approved should be sent as soon as all work for you is finished. If the representative will not charge a fee, a statement saying so, signed and dated by the representative, should be sent to us instead.

When the amount of the fee is decided, we will pay the representative from the benefits we withheld.

If the approved fee is more than the money we have withheld, the Social Security Administration is not involved in paying the rest of the fee.

If the approved fee is less than the money we have withheld, we will send you the rest of the money.

Any request for fee approval should be sent to:

> Office of Disability and
> International Operations
> 1500 Woodlawn Drive
> BALTIMORE, MARYLAND 21241-1500

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Your Responsibilities

Your benefits are based on the information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security or Survivors Benefits...What You Need to Know". It tells you what must be reported and how to report. Please be sure to read that part of the pamphlet which explains how work could change payments.

## Other Information

We are sending a copy of this notice to JEAN OWEN.

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HB2            Page 3 of 4

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide your case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim". It contains more information about the appeal.

## If You Have Any Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-585-232-3890. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
ROOM 500
100 STATE ST
ROCHESTER, NY 14614

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Jo Anne B. Barnhart*

Jo Anne B. Barnhart
Commissioner
of Social Security

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HB2

# PAYMENT SUMMARY

**Your Payment Of $2,792.50**

Here is how we figured your
first payment:

      Benefits due for June 2004
      through April 2006
      including any cost of living increase,
      less monthly rounding of benefits  . . . . . . . . . . . . . . . . . . . . . . . $  3,668.00

      Amount we subtracted because of

          •   money to pay
              your representative   . . . . . . . . . . . . . . . . . . . . . . . . . . .       875.50

This equals the amount of
your first payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $  2,792.50

**Your Regular Monthly Payment**

Here is how we figured your
regular monthly payment effective May 2006:

      You are entitled to a monthly benefit of   . . . . . . . . . . . . . . . . . . $     166.40

      Amount we subtracted because of

          •   rounding (we must round down to
              a whole dollar)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        .40

This equals the amount of
your regular monthly payment   . . . . . . . . . . . . . . . . . . . . . . . . . . $     166.00

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Important Information

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  May 27, 2006
Claim Number:  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HB2

000241 MCSM77 NI  0.810
JEAN OWEN
ATTY FOR FAMILY OF J
MAGEE
5700 BROADMOOR ST
STE 310
MISSION, KS 66202-2412

Enclosed is a copy of a letter we sent to RENEE HERKO MAGEE.

**If You Have Any Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security.  If you have any specific questions, call us toll-free at 1-800-772-1213.  We can answer most questions over the phone.  If you prefer to visit one of our offices, please check the local telephone directory for the office nearest you.  Or call us and we can give you the office address.  Please have this letter with you if you call or visit an office.  It will help us answer your questions.

Jo Anne B. Barnhart
Commissioner
of Social Security

C

ML0233

060605021936

ML0234

Financial Index for 640407128904

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Award

RECEIVED

MAY 3 0 2006

COCUDATA, INC.

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  May 27, 2006
Claim Number:  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HC1

JOHN MAGEE JR FOR
MAX THOMAS MAGEE
71 ONTARIO ST
HONEOYE FALLS, NY 14472

MAX T MAGEE is entitled to monthly child's benefits beginning June 2004.

We have chosen you to be his representative payee.  Therefore, you will receive his checks and use the money for his needs.

## What We Will Pay And When

- You will receive $2,792.50 around June 2, 2006.

- This is the money MAX is due for June 2004 through April 2006.

- MAX T MAGEE's next payment of $166.00, which is for May 2006, will be received on or about the second Wednesday of June 2006.

- After that you will receive $166.00 on or about the second Wednesday of each month.

- These and any future payments will go to the financial institution you selected.  Please let us know if you change your mailing address, so we can send you letters directly.

- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on JOHN C MAGEE JR's date of birth.

## Your Benefits

We raised his monthly benefit amount beginning December 2004 and again in December 2005 because the cost of living increased.

See Next Page

ML0235

## Work And Earnings Affect Payments

The monthly earnings test applies only to 1 year. That year is the first year a beneficiary has a non-work month after entitlement to Social Security benefits. Our records show that MAX had or will have at least one non-work month in 2004. If he ever goes to work, we will pay benefits for each year based on his work and earnings for that year.

## Health Insurance For Children

If this notice is for a child under age 19 who is not covered by health insurance, there is a Children's Health Insurance Program that may help. To find out more, you can look on the Internet at www.insurekidsnow.gov or call, toll free, 1-877-KIDS-NOW (1-877-543-7669). The number connects you to your state program.

## Information About Representative's Fees

When a representative wants to charge for helping with a Social Security claim, we must first approve the fee. We usually withhold 25 percent of past due benefits in order to pay the approved representative's fee.

Because a representative helped with this claim, we withheld $875.50 from his first check.

If the representative wants to charge a fee, a request to have it approved should be sent as soon as all work for MAX is finished. If the representative will not charge a fee, a statement saying so, signed and dated by the representative, should be sent to us instead.

When the amount of the fee is decided, we will pay the representative from the benefits we withheld.

If the approved fee is more than the money we have withheld, the Social Security Administration is not involved in paying the rest of the fee.

If the approved fee is less than the money we have withheld, we will send MAX the rest of the money.

Any request for fee approval should be sent to:

> Office of Disability and
> International Operations
> 1500 Woodlawn Drive
> BALTIMORE, MARYLAND 21241-1500

## Other Social Security Benefits

The benefit described in this letter is the only one he can receive from Social Security. If you think that he might qualify for another kind of Social Security benefit in the future, you will have to file another application.

**Your Responsibilities**

MAX' benefits are based on the information you gave us. If this information changes, it could affect his benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security or Survivors Benefits...What You Need to Know". It tells you what must be reported and how to report. Please be sure to read that part of the pamphlet which explains how work could change payments.

As a representative payee, you have additional responsibilities. They are discussed in the enclosed pamphlet, "A Guide for Representative Payees."

**Other Information**

We are sending a copy of this notice to JEAN OWEN.

**Do You Disagree With The Decision?**

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide MAX' case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to him.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim". It contains more information about the appeal.

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HCl                                              Page 4 of 5

**If You Have Any Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-585-232-3890. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

> SOCIAL SECURITY
> ROOM 500
> 100 STATE ST
> ROCHESTER, NY 14614

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

ML0238

# PAYMENT SUMMARY

**MAX' Payment Of $2,792.50**

Here is how we figured MAX'
first payment:

      Benefits due for June 2004
      through April 2006
      including any cost of living increase,
      less monthly rounding of benefits   . . . . . . . . . . . . . . . . . . . . . . .$  3,668.00

      Amount we subtracted because of

         •   money to pay
            MAX' representative   . . . . . . . . . . . . . . . . . . . . . . . . . .    875.50

This equals the amount of
MAX' first payment   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$  2,792.50

**MAX' Regular Monthly Payment**

Here is how we figured MAX'
regular monthly payment effective May 2006:

      He is entitled to a monthly benefit of   . . . . . . . . . . . . . . . . . . . . .$    166.40

      Amount we subtracted because of

         •   rounding (we must round down to
            a whole dollar)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     .40

This equals the amount of
MAX' regular monthly payment   . . . . . . . . . . . . . . . . . . . . . . . . . .$    166.00

ML0239