**EXHIBIT "C"**

**BENEFIT PLAN 1D.02**
**Kodak Pre-Flex Long-Term Disability Plan**
**Effective Date: August 1, 2002**
**As Amended: August 28, 2002**
**No. of Pages: 21 plus**
**Appendix A**

## Kodak Pre-Flex Long-Term Disability Plan

**Article**                                                                              **Page**

1. INTRODUCTION .................................................. 1

2. DEFINITIONS ...................................................... 1

3. PARTICIPATION AND ELIGIBILITY ........................ 11

4. CLAIMS AND PAYMENT OF BENEFITS ................. 12

5. CALCULATION OF BENEFITS ............................... 14

6. EMPLOYMENT STATUS ....................................... 17

7. COST AND FUNDING ........................................... 17

8. ADMINISTRATION AND GENERAL PROVISIONS ...... 19

**Appendix A**

I03A0131ls

ML0566

**BENEFIT PLAN 1D.02**
**Kodak Pre-Flex Long-Term Disability Plan**
**Effective Date: August 1, 2002**
**As Amended: August 28, 2002**
**Page 1**

## 1.    INTRODUCTION

### 1.1 Name

The name of the Plan is the Kodak Pre-Flex Long-Term Disability Plan.

### 1.2 Purpose

The Kodak Pre-Flex Long-Term Disability Plan, combined with certain legally mandated disability benefits, replaces a portion of an eligible employee's salary during a prolonged period of total (but not necessarily permanent) Disability.

Effective December 31, 1992, enrollment in the Kodak Pre-Flex Long-Term Disability Plan was closed to all persons except Caribbean Employees. Those persons eligible for Benefits as of December 31, 1992 will continue to receive those Benefits so long as they qualify under the terms of the Plan.

## 2.    DEFINITIONS

The terms used in this Plan have the following meanings unless a different meaning is clearly required by the context.

### 2.1 Adjusted Employment Date

"Adjusted Employment Date" means an employment date which has been adjusted by the Employer, e.g., to reflect reinstatement of prior Service upon return to active employment following a termination of employment. When no termination of employment has occurred, Adjusted Employment Date is the same as Current Employment Date.

### 2.2 Average Shift Allowance

"Average Shift Allowance" is the average of hourly shift allowances paid to an Employee as compensation for work performed during evening or night hours.

### 2.3 Average Weekly Hours

"Average Weekly Hours" means a weekly average obtained by dividing all hours worked plus all paid absence hours in the previous 52 weeks by weeks out of the last 52 weeks where work was performed or a paid absence occurred.

ML0567

## 2.4 Benefits

"Benefits" means the long-term disability benefits calculated pursuant to Article 5 and paid pursuant to Article 4.

## 2.5 Caribbean Employee

"Caribbean Employee" means an Employee of Kodak Caribbean, Limited.

## 2.6 Claims Administrator

"Claims Administrator" means a person who has entered into an administrative services agreement with Kodak in accordance with which such person is responsible for the administration of claims, or, in the absence of such person, Kodak. The name and address of the Claims Administrator is set forth in Section 8.1.

## 2.7 Code

"Code" means the Internal Revenue Code of 1986, as amended.

## 2.8 Cooperative Intern

"Cooperative Intern" means an Employee who is a college student pursuing studies of interest to the Employer and who generally works a full-time schedule on an alternate work/school block basis.

## 2.9 Conditional Employee

"Conditional Employee" means an exempt or nonexempt employee who is in an evaluation period during the first 12 months (6 months at Kodak Colorado Division) of employment. A Conditional Employee is hired for a position where it is expected that work needs to be done on a sustained basis. At the end of the evaluation period, the individual may be reclassified as a Regular Full-Time Employee or a Regular Part-Time Employee, or terminated. The Conditional Employee classification does not include individuals who are hired as Regular Full-Time or Regular Part-Time Employees for designated nonexempt positions requiring specialized skills, training or experience.

## 2.10 Current Employment Date

"Current Employment Date" means the first day of work in the latest period of Continuous Service.

ML0568

## 2.11  Disability or Disabled

"Disability" or "Disabled" means a condition fulfilling the following requirements:

    (a)    The condition results in a Participant's total and continual inability to engage in Gainful Work; and

    (b)    Due to the condition, the Participant remains under the care of a licensed physician; and

    (c)    The condition did not result from the Participant's participation in an insurrection, rebellion or riot, or the Participant's commission of a crime of which he is convicted in a court of law; and

    (d)    The condition:

        (1)    Has lasted for a continuous period of 26 weeks or more inclusive of time during which the Participant was an STD Recipient or he received WCIB; or

        (2)    With respect to an STD Recipient whose employment is involuntarily terminated as a result of a layoff under TAP or a Special Separation Program, the condition has lasted for less than 26 weeks, but reasonably can be expected to last at least 26 weeks, or to result in death within 26 weeks.

## 2.12  Employee

"Employee" means any person who is reported on the payroll records of the Company in the United States as a common law employee and compensated for services in the form of an hourly wage or salary.  The term "Employee" also includes certain persons employed outside the United States as determined by the Plan Administrator.

An Employee shall continue to be treated as an Employee for all purposes under the Plan while the Employee is receiving Short-Term Disability Benefits or Workers' Compensation Income Benefits, subject to any special rules set forth in the Plan.

For purposes of clarification only, and not to limit the generality of the foregoing definition, the term "Employee" does not include, among other persons:  independent contractors, leased employees (within the meaning of Section 414(n) of the Code), or persons whose employment has terminated on account of retirement, long-term disability or Leave of Absence.

## 2.13 Employer

"Employer" means Kodak and its following subsidiaries and affiliates:

> Eastman Gelatine Corporation
> Kodak Caribbean, Limited

## 2.14 ERISA

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

## 2.15 Family Social Security Disability Insurance Benefits

"Family Social Security Disability Insurance Benefits" means benefits payable under Social Security on behalf of the spouse or children of a Participant, in addition to the Participant's Primary Social Security Disability Insurance Benefits.

## 2.16 Gainful Work

"Gainful Work" means paid employment for which a person is, or becomes, reasonably qualified by education, training, or experience, and which is more than transitory in nature, as determined by Kodak. Notwithstanding the foregoing, "Gainful Work" does not include Rehabilitative Employment.

## 2.17 Insurance Annual Salary Rate

"IASR" or "Insurance Annual Salary Rate" means:

(a)    An Employee's individual (hourly) rate in effect on a particular day, plus the Average Shift Allowance in effect on the same day, multiplied by:

   (1)    2,080 hours for:

      (A)    Regular Full-Time Employees
      (B)    Full-Time Special Program Employees
      (C)    Full-Time Conditional Employee

   (2)    Moving Average Weekly Hours in effect that day (or normal scheduled weekly hours up to 40 if the Employee had not been

employed for the full year immediately preceding that day) multiplied by 52 for:

(A)    Nonexempt Regular Part-Time Employees
(B)    Nonexempt Part-Time Special Program Employees
(C)    Nonexempt Part-Time Conditional Employees

(3)    Normal scheduled weekly hours in effect on that day multiplied by 52 for:

(A)    Exempt Regular Part-Time Employees
(B)    Exempt Part-Time Special Program Employees
(C)    Exempt Part-Time Conditional Employees

(4)    1,040 hours for:

(A)    Cooperative Interns
(B)    All Employees, other than regular part-time physicians, whose moving Average Weekly Hours or normal scheduled hours is less than 20.

(b)    An Employee's IASR is rounded to the nearest $100.

(c)    When an Employee's employment classification changes from a part-time class to a full-time class described above, or from a full-time class to a part-time class described above, the hours component of IASR is adjusted as of the date of such reclassification for purposes of determining Benefits.

(d)    Because the individual rate for certain commission-eligible employees is reduced below the normal rate for their applicable salary grade, IASR is adjusted by multiplying the individual rate times the commission calculating factor for the appropriate commission plan specified in the Kodak Commission Compensation Plan (Compensation Plan No. 2C1).

(e)    Because the base salary rate for each Employee eligible for certain management performance incentives is reduced below the normal rate for his applicable salary grade, IASR is adjusted to reflect what the normal rate would be in the absence of the reduction under the management performance incentive arrangement.

(f)    To the extent that IASR is includable in the definition of "compensation" found in Section 414(s) of the Code, IASR of Participants whose benefits are funded through the Kodak Welfare Benefit Plans Trust will not exceed

$200,000 or the indexed amount set forth in applicable federal regulations, in accordance with Section 505(b)(7) of the Code.

## 2.18  Kodak

"Kodak" means Eastman Kodak Company.

## 2.19  Leave of Absence

"Leave of Absence" means a period of absence from work approved by the Employer under a leave of absence plan of the Employer.

## 2.20  LTD Benefit Date

"LTD Benefit Date" means, with respect to a Participant with a Disability, the day immediately following the earlier of the following:

    (a)    The date on which the Participant's employment with the Employer terminates following:

        (1)    The day on which he or she exhausts all benefits payable to him or her under any short-term disability plan of the Employer (other than State Disability Benefits);

        (2)    The day on which he or she exhausts all accrued vacation benefits payable to him immediately following the exhaustion of all benefits described in Section 2 above, provided that, before he or she ceased to be an STD Recipient, the Participant elected to receive such accrued vacation benefits in other than a lump sum.  If the Participant does not so elect and accrued vacation benefits are paid in a lump sum, his or her LTD Benefit Date will be the day following the day on which he or she exhausts all benefits payable under any short-term disability plan of the Employer (other than State Disability Benefits); and

        (3)    the day on which he or she exhausts the period of leave to which he or she is entitled under the Family and Medical Leave Act of 1993 immediately following the exhaustion of all benefits described in Section 2 above.

    (b)    The date on which the Participant ceases to be an STD Recipient due to involuntary termination of his or her employment with the Employer as the result of layoff under TAP or a Special Separation Program.

ML0572

## 2.21 LTD Payee

"LTD Payee" means a Participant who is entitled to receive Benefits (or would be entitled to receive Benefits but for offsets and deductions). Although entitlement to Benefits may not be determined until some time after the Participant's LTD Benefit Date, upon such a determination he is deemed to be an LTD Payee as of his LTD Benefit Date.

## 2.22 Medical Department

"Medical Department" means one or more medical departments of Kodak.

## 2.23 Monthly Benefit Payment

"Monthly Benefit Payment" means the monthly installment of a benefit calculated and paid in accordance with the terms of the Plan.

## 2.24 Normal Retirement Date

"Normal Retirement Date" means the "normal retirement date" as that term is defined in the Kodak Retirement Income Plan (Benefit Plan No. 1R.01) or another Company-sponsored defined-benefit pension plan (intended to be qualified under Section 401 of the Internal Revenue Code) under which the individual in question receives or is eligible to receive retirement benefits.

## 2.25 Participant

"Participant" means a person with coverage under the Plan. Persons eligible for coverage are described in Article 3.

## 2.26 Pension Plan

"Pension Plan" means the Kodak Retirement Income Plan (Benefit Plan No. 1R.01) or other retirement plan of the Employer that is a defined-benefit pension plan intended to be qualified under Section 401 of the Code.

## 2.27 Plan

"Plan" means this Kodak Pre-Flex Long-Term Disability Plan (Benefit Plan No. 1D.02), as it may be amended.

## 2.28  Primary Social Security Disability Insurance Benefits

"Primary Social Security Disability Insurance Benefits" means benefits payable to an LTD Payee under Social Security on account of his disability.

## 2.29  Regular Full-Time Employee

"Regular Full-Time Employee" means an Employee who does not fall into another employment classification and who works a regular schedule of:

    (a)    40 work hours or more (scheduled hours not pay hours) per week (shorter time periods pursuant to local custom; where required by law, or by the Employee's health); or

    (b)    Alternative work schedules which average 40 or more work hours over the course of the rotation (e.g., alternating 36 and 48-hour work weeks comprised of 12 hour days).

## 2.30  Regular Part-Time Employee

"Regular Part-Time Employee" means an Employee who does not fall into another employment classification and who works a regular schedule of less than 40 work hours per week.

## 2.31  Rehabilitative Earnings

"Rehabilitative Earnings" means wages received from Rehabilitative Employment.

## 2.32  Rehabilitative Employment

"Rehabilitative Employment" means employment outside the Employer engaged in by an LTD Payee which is intended to help restore him to Gainful Work, and which has been pre-approved by Kodak, so long as that approval is in force.

## 2.33  Service, Continuous Service, Adjusted Service

"Service" means the elapsed days, months, and years since the Employee's Adjusted Employment Date.

"Continuous Service" is the period of elapsed days, months, and years of Service which has not been interrupted since the Employee's Current Employment Date, including but not limited to Service with an affiliate recognized by Kodak.  The resumption of

ML0574

employment immediately following a Leave of Absence, military service, or the Cooperative Intern program means that Continuous Service has not been interrupted.

"Adjusted Service" is the aggregate of days, months, and years of Service credit resulting from the linkage of the current span of employment with one or more spans of prior Service which have qualified for reinstatement. (Thirty days equate to one month; twelve months equate to one year.) The qualification for Service reinstatement is established by the leaving reason assigned to the prior Service span. Within the controlled group of Kodak corporations, Adjusted Service includes any Service recognized by any affiliate unless preempted by contractual agreements.

## 2.34 Social Security

"Social Security" means the Social Security Act of 1935, as amended, codified at 42 U.S.C. §§ 301 et. seq.

## 2.35 Special Program Employee

"Special Program Employee" means an Employee who is one of the following:

    (a)    High School Co-op. A "High School Co-op" means an Employee who is a high school senior working a part-time schedule (normally 20 hours per week, but more hours may be worked during vacation or school breaks, following graduation, or where school conditions permit). A High School Co-op is limited to 9 months of employment (a school year) except where 12 months is needed in special situations.

    (b)    High School Intern. A "High School Intern" means an Employee who is a high school student working a full-time schedule during summer vacations (including the summer immediately following graduation) and is generally limited to 8 weeks of employment.

    (c)    General Summer Employee. A "General Summer Employee" means an Employee who is hired on a full-time or part-time basis for the summer following the completion of at least one year of college. Employment of any person as a General Summer Employee is limited to two summers.

    (d)    PRIS2M. A "PRIS2M" means an Employee who is a third- or fourth-year high school student with a mathematics and science major, who generally works a part-time schedule (usually for 8 weeks).

I03A0131ls

(e)    Summer (College) Intern.  A "Summer (College) Intern" means an Employee who is a college student pursuing studies of interest to the Employer, who generally works a full-time schedule during the summer.

(f)    Teacher Intern.  A "Teacher Intern" means an Employee who is a high school or college teacher hired on a full-time basis, generally for a minimum of 10 weeks up to the length of the summer break.

(g)    IT2 Intern.  A "IT2 Intern" means an Employee who is a disabled person working full time in a 10-week training program.

## 2.36  Special Separation Program

"Special Separation Program" means a reduction in the work force designated as a Special Separation Program by Kodak's Board of Directors, a committee of such Board, or the management of Kodak.

## 2.37  SSDIB or Social Security Disability Insurance Benefits

"SSDIB" or "Social Security Disability Insurance Benefits" are Family Social Security Disability Insurance Benefits or Primary Social Security Disability Insurance Benefits.

## 2.38  State Disability Benefits

"State Disability Benefits" means the benefits for which a person is eligible pursuant to the statutory disability benefits law of any state, whether or not such benefits are payable under a short-term disability plan of the Employer.

## 2.39  STD Benefits or Short-Term Disability Benefits

"STD Benefits" or "Short-Term Disability Benefits" means the payment of benefits under the Kodak Short-Term Disability Plan (Benefit Plan No. 1D.01) or any other short-term disability plan of the Employer.

## 2.40  STD Recipient

"STD Recipient" means any Employee who is receiving benefits under any short-term disability plan of the Employer.

## 2.41  TAP or Termination Allowance Plan

"TAP" or "Termination Allowance Plan" means the Kodak Termination Allowance Plan (Benefit Plan No. 1T.01).

### 2.42  WCIB or Workers' Compensation Income Benefits

"WCIB" or "Workers Compensation Income Benefits" means those benefits (exclusive of impairment awards, medical reimbursement or survivor's benefit) payable pursuant to the workers' compensation law of any state, whether or not a person is actually receiving such benefits.

## 3.    PARTICIPATION AND ELIGIBILITY

### 3.1  Eligibility

   (a)   **In General.**  Eligibility for the plan was closed as of December 31, 1992 for all persons except Caribbean Employees.  LTD Payees receiving Benefits on December 31, 1992 shall continue to receive such Benefits so long as they qualify under the terms of the Plan.

   (b)   **Caribbean Employees.**  Caribbean Employees who meet the following requirements are automatically covered under the Plan as of the date described in Section 3.2:

      (1)   The Caribbean Employee is a Regular Full-time Employee, Regular Part-time Employee or Conditional Employee.

      (2)   The Caribbean Employee is not on a Leave of Absence.

      (3)   The Caribbean Employee has completed at least one year of Continuous Service or Adjusted Service, except that this requirement shall be waived with respect to a Disability for which Workers' Compensation Income Benefits are payable.

### 3.2  Eligibility Effective Date

A Caribbean Employee becomes a Participant on the first day immediately following the date on which all applicable conditions of eligibility are met.

BENEFIT PLAN 1D.02
Kodak Pre-Flex Long-Term Disability Plan
Effective Date: August 1, 2002
As Amended: August 28, 2002
Page 12

## 4.     CLAIMS AND PAYMENT OF BENEFITS

### 4.1  Claim for Benefits

(a)     **How Claims Must Be Submitted.**  A Participant must submit a Claim to the Claims Administrator in such form as the Claims Administrator shall prescribe.

(b)     **When Claims Must Be Submitted.**  A Claim must be received by the Claims Administrator within one year after the earlier of: (1) the date the Participant ceases to be an STD Recipient; or (2) the date the Participant's employment is terminated.  Claims received after that date will be denied.

(c)     **Notification of Claim Disposition.**  A Claimant shall be notified of the disposition of a Claim by the Claims Administrator.  If a Claim is allowed, the Claimant will be notified in writing of the amount and starting date of the Monthly Benefit Payments.

### 4.2  Benefits Provided Under the Plan

Upon the establishment of an LTD Benefit Date with respect to a Participant, the Benefit shall be payable in accordance with this Article 4, subject to all terms, conditions and limitations of the Plan.

### 4.3  Payment of Benefits

(a)     **Amount and Form of Payment.**  Benefits shall be calculated in accordance with Article 5 and paid to the LTD Payee by the Claims Administrator through Monthly Benefit Payments.

(b)     **Application for Social Security Benefits.**  In order initially to qualify for Benefits, a Participant must submit a claim for Social Security Disability Insurance Benefits within 30 days of his or her LTD Benefit Date, except where the Participant's life expectancy at that time is less than six months.

(c)     **Commencement of Benefits.**  An LTD Payee shall receive his Benefit through prospective Monthly Benefit Payments beginning on or about the first day of the calendar month following the later of his LTD Benefit Date or the date on which his claim is approved, subject to the provisions of this Section 4.4 and Section 4.5.  The Monthly Benefit Payment for the month in which the LTD Benefit Date occurs shall be prorated if necessary. Benefits due with respect to the period between the LTD Benefit Date and

the date of the first Monthly Benefit Payment, if any, shall be paid in a lump sum (without interest thereon) with the first Monthly Benefit Payment.

(d)    **Incapacity.**  Monthly Benefit Payments are made to the LTD Payee except if, as the result of incapacity, a personal representative is appointed for the LTD Payee in compliance with the law of the State in which the LTD Payee resides, Monthly Benefit Payments may be made to such personal representative.

(e)    **No Assignment of Benefits.**  Benefits under the Plan cannot be assigned to another party.

(f)    **Recovery of Overpayments.**  The Claims Administrator shall notify the LTD Payee of any overpayment and make arrangements for repayment. Such arrangements may include a lump-sum payment from the LTD Payee.  If an LTD Payee has an outstanding overpayment, unless the Claims Administrator has agreed to other arrangements for repayment and the LTD Payee complies with such arrangements, subsequent Monthly Benefit Payments shall be withheld and applied against such overpayment until it is fully repaid.  If Monthly Benefit Payments terminate before an overpayment is repaid to the Plan, the Plan Administrator may pursue legal action to recover the unpaid amount.

## 4.4  Duration of Benefits

Benefits will be paid until the earliest of the following occurs:

(a)    The LTD Payee is no longer Disabled (e.g., he or she engages in Gainful Work);

(b)    Death of the LTD Payee;

(c)    Failure of the LTD Payee to meet any one of the requirements set forth in the Plan as a condition to receiving Benefits;

(d)    With respect to an LTD Payee whose Disability commenced prior to his 62nd birthday, his Normal Retirement Date;

(e)     With respect to an LTD Payee whose Disability commenced on or after his 62nd birthday, the date on which he has received Benefits for the number of months shown on the table below:

| Age When Disability Commenced | Duration of Benefits |
|:---:|:---:|
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 - 74 | 12 months |
| 75 and older | 6 months |

**4.5  Rehabilitative Employment**

Subject to the approval of the Employer, an LTD Payee may engage in Rehabilitative Employment for up to one year.  An extension may be granted if special circumstances warrant.  Approval of Rehabilitative Employment is made jointly by the Employer's employee benefits department and the Medical Department.

**5.     CALCULATION OF BENEFITS**

**5.1  IASR Used to Calculate Benefits**

IASR used to calculate the Benefit of an LTD Payee who is receiving Benefits as of December 31, 1992 shall not change so long as that person remains an LTD Payee.  For Participants who become LTD Payees on or after January 1, 1993, Benefits will be based on the greater of:

(a)     IASR calculated as of the LTD Benefit Date; or

(b)     IASR calculated as of the later of: (i) January 1 of the Plan Year in which the Disability occurs or (ii) the date the Participant becomes eligible for coverage under the Plan.

I03A0131Is

ML0580

## 5.2  Formula for Benefit

Benefits shall equal 40 percent of IASR determined per Section 2.17, reduced by the sum of the following:

(a)    50 percent of his estimated, or actual if known, Primary Social Security Disability Insurance Benefits, except when no SSDIB application is required pursuant to Section 2.17;

        (1)    100 percent of Workers' Compensation Income Benefits;

        (2)    100 percent of State Disability Benefits;

        (3)    50 percent of any Rehabilitative Earnings;

        (4)    100 percent of payments made pursuant to TAP while the Participant's claim for Benefits was pending; and

        (5)    100 percent of any retirement benefits described in Section 5.4.

(b)    **Social Security Offset.**  Prior to the final determination of the Participant's SSDIB, his Benefits shall be reduced by an estimated SSDIB, as determined by the Claims Administrator.  When the Participant's SSDIB is approved or disapproved, his Benefits shall be recalculated, based on the actual amount of SSDIB approved.  If Benefits were underpaid, the Employer shall pay the retroactive amount in a lump sum along with the following month's adjusted Monthly Benefit Payment.  If Benefits were overpaid, the Claims Administrator shall contact the Participant to arrange for reimbursement of the overpayment in a lump sum.  If repayment is not made in a lump sum, subsequent Monthly Benefit Payments shall be withheld and applied against such overpayment until it is fully recovered (see Section 4.3).  Subsequent Monthly Benefit Payments shall be based on the approved SSDIB.

If SSDIB is denied, the Participant must appeal the denial not later than 60 days from the date of his denial notice.  If SSDIB is denied again, such Participant must continue to reapply for SSDIB to remain qualified for Benefits, unless this requirement is waived by the Claims Administrator.

From time to time SSDIB is increased.  Any such increase made after the Participant's LTD Benefit Date will not affect the amount of his Benefits.  However, increases or decreases in SSDIB because of a change in Family Social Security Benefits may affect the Participant's Benefits if the Benefits

ML0581

were, or become, subject to the 70 percent limitation described in Section 5.2.

(c) **Workers' Compensation Offset.** WCIB are sometimes paid as a lump-sum in lieu of future regular weekly ("periodic") payments. In such cases, reduction of a Participant's Benefits shall be based on the specific dollar amount of weekly liability and the period of time the payment is intended to cover, as such amount and period are defined by the board or other entity approving the WCIB. When the defined period ends, the WCIB reduction is eliminated. No "schedule" award for permanent partial impairment of limbs, extremities, vision or hearing -- whether lump sum or weekly -- is offset against Benefits.

(d) **Certain Reductions in Payments.** Notwithstanding any provision to the contrary in the Plan, Monthly Benefit Payments will be reduced by:

(1) Any amounts as necessary to comply with the limitation set forth in Section 5.3;

(2) Any amounts required by law to be withheld including, but not limited to, any applicable federal, state and local income tax withholdings, and garnishments; and

(3) All or part of any overpayment, until such overpayment has been fully repaid.

## 5.3 Limitation (70%)

Benefits calculated in accordance with Section 5.1 will be reduced, if necessary, so that Benefits plus all Social Security Disability Insurance Benefits, Workers' Compensation Income Benefits, and State Disability Benefits will not exceed 70% of the LTD Payee's IASR. For purposes of calculating whether Benefits must be reduced so as not to exceed 70% of IASR, Rehabilitative Earnings are excluded.

## 5.4 Reduction for Pension Plan Benefits

(a) In the event an LTD Payee voluntarily elects to receive payment of retirement benefits from the Pension Plan, regardless of the LTD Payee's age, his Monthly Benefit Payments shall be reduced each month:

(1) by an amount equal to the monthly annuity actually paid to him from the Pension Plan; or

    (2)    if the LTD Payee elects to receive his retirement benefits in the form of a lump sum, by an amount equal to the equivalent monthly annuity payable at the LTD Payee's retirement date under the straight life annuity form of payment under the Pension Plan.

(b)    If an LTD Payee has not elected to begin receiving retirement benefits under the Pension Plan, the LTD Payee's Monthly Benefit Payment shall be reduced by an amount equal to the normal form of monthly retirement benefits payable at the LTD Payee's Normal Retirement Date, if the LTD Payee:

    (1)    has reached his Normal Retirement Date;

    (2)    is eligible to continue to receive Benefits beyond his Normal Retirement Date, pursuant to Section 4.3; and

    (3)    defers commencement of his Pension Plan benefits.

## 6.    EMPLOYMENT STATUS

A Participant is terminated from the payroll at the end of the workday immediately preceding his LTD Benefit Date. Eligibility for State Disability Benefits does not extend the termination date.

An LTD Payee who recovers may apply for reemployment with the Employer. Such person shall not have a preference over other applicants as a result of their receiving Benefits of this Plan. Should such person become a Caribbean Employee, he or she may become covered as a Participant if all eligibility requirements under the Plan are met. Should such person become an Employee other than a Caribbean Employee, he or she would not become a Participant in this Plan, but may be eligible for coverage under the Kodak Long-Term Disability Plan (Benefit Plan No. 1D.04) if all of the eligibility requirements under that plan are met.

## 7.    COST AND FUNDING

### 7.1  Cost of Plan Coverage

The cost of Plan coverage shall be paid for by the Employer. Employees make no contributions to the Plan.

I03A013IIs

ML0583

## 7.2 Funding

(a)   **In General.** Benefits shall be paid from the general assets of the Employer except insofar as Benefits are paid from a trust established in accordance with Section 7.2(b). Nothing herein shall be construed to require the Employer, the Plan Administrator named in Section 8.1, or any other person to maintain any fund or segregate any amount for the benefit of any Participant, and no Participant or other person shall have any claim against, right to, or security or other interest in, any fund, account or asset of the Employer from which any payment under the Plan may be made.

The Employer shall make funds available to the Claims Administrator for the payment of Benefits. The claims administrator, under an agreement with Kodak, determines the amount of a Participant's Benefits in accordance with the Plan provisions. The Claims Administrator issues the payment for all approved claims, regardless of the source of funding.

(b)   **Establishment of a Trust.** Kodak may, but shall not be required to, establish one or more trusts, including one or more trusts that are tax exempt under Section 501(c)(9) of the Code, to hold some or all contributions and to pay some or all Benefits under the Plan. In addition, any such trust may reimburse the Employer for Benefits paid by the Employer acting as agent for the trustee of such trust. The governing instrument of any such trust shall permit the Employer to obtain a refund of any amounts erroneously contributed to the trust, to the extent such refund is permitted under ERISA and the Code. No individual Participant shall have an interest in or claim against the assets of any such trust.

(c)   **Nondiscrimination Rules.** If any trust is established in accordance with Section 7.2(b) that is tax exempt under Section 501(c)(9) of the Code, the Plan and such trust shall comply with the nondiscrimination rules of Section 505 of the Code. In addition, no Benefits shall be payable from such trust to a Participant who is a "highly compensated individual" within the meaning of Section 505(b) of the Code. Benefits payable to such a Participant shall be paid from the general assets of the Employer.

## 7.3 Administration Expenses

All administrative expenses of the Plan are paid directly by the Employer except to the extent that the payment of such amounts is permitted by the trust established in accordance with Section 7.2(b).

I03A013IIs

ML0584

## 8.    ADMINISTRATION AND GENERAL PROVISIONS

### 8.1  General Information

The Plan is sponsored and maintained on an uninsured basis by the Eastman Kodak Company, 343 State Street, Rochester, New York 14650.  The Plan Administrator is the Director, Worldwide Benefits, Eastman Kodak Company, located at this same Kodak address, telephone (585) 724-4800.  Kodak's Employer Identification Number, assigned by the Internal Revenue Service, is 16-0417150 and the Plan Number, assigned by Kodak, is 506.  Financial records are maintained on a calendar-year basis, with each Plan year ending December 31.  By law, the Plan is classified as a "welfare" type of benefit plan.

Metropolitan Life Insurance Company, One Madison Avenue, New York, New York, is currently serving as Claims Administrator.  The Claims Administrator assists in the administration of the Plan pursuant to an administrative service agreement which provides for such services as reviewing claims for the purpose of approving or denying Benefits, issuing payment checks, and assisting in general planning.

Kodak has entered into a trust agreement creating the Kodak Welfare Benefit Plans Trust pursuant to Section 501(c)(9) of the Code.  The Chase Manhattan Bank, N.A., One Chase Square, Rochester, New York. serves as a trustee and holds the assets of the trust pursuant to the trust agreement.  Fund assets held by the trustee may not be used for any purpose other than for the exclusive benefit of persons entitled to Benefits and for reasonable expenses of administering the Plan.

The Plan Administrator is the agent for service of legal process and is located at the above Kodak address, telephone (585) 724-4800.  Legal process may also be served on the Claims Administrator, or on the trustee, The Chase Manhattan Bank, N.A.

### 8.2  Plan Amendment, Suspension, or Termination

(a)    **Plan Amendment, Suspension, or Termination**  Eastman Kodak Company may amend, suspend, or terminate the Plan in whole or in part at any time, for any reason.

(b)    **Distribution of Plan Assets Upon Termination.**  Upon termination of the Plan, Plan assets will be applied, as directed by the Plan administrator, for the exclusive benefit of Participants and or for the payment of death, short-term disability, or other benefits within the meaning of Section 501(c)(9) of the Code, and the payment of reasonable expenses of administering the Plan.

ML0585

### 8.3  Claims Review Procedure

The Plan Administrator shall maintain a procedure under which any Participant whose claim for Benefits has been denied will receive written notice which clearly sets forth the specific reason or reasons for such denial, the specific Plan provision or provisions on which the denial is based, any additional information necessary for the claimant to perfect the claim, if possible, an explanation of why such additional information is necessary, and an explanation of the Plan's claim review procedure.  Said procedure shall allow a claimant at least 60 days after receipt of the written notice of denial to request a review of such denied claim, and the Plan Administrator, or his designated representative, shall make the decision based on such review within 60 days (120 days if specific circumstances require more time) of the receipt of the request for review.  The decision on review shall be in writing and shall clearly describe the reasons for the decision of the Plan Administrator or his designated representative.  In reviewing any claim, the Plan Administrator or his designated representative shall have full discretionary authority to determine all questions arising in the administration, interpretation, and application of the Plan, including any ambiguities in Plan language.  In all such cases, the decision of the Plan Administrator or his designated representative shall be final and binding upon all parties.

### 8.4  Governing Law

This document shall be construed in accordance with the laws of New York State, except where the law of some other jurisdiction must be applied in respect of individual Participants or those claiming under or through them, and except as such laws are preempted by ERISA.

### 8.5  Gender and Number

A pronoun or adjective in the masculine gender includes the feminine gender, the singular includes the plural, and the plural includes the singular, unless the context indicates otherwise.

BENEFIT PLAN 1D.02
**Kodak Pre-Flex Long-Term Disability Plan**
**Effective Date:  August 1, 2002**
**As Amended:  August 28, 2002**
**Appendix A**

## APPENDIX A

Notwithstanding any provision in the Plan to the contrary, the Plan Administrator may, in his or her sole discretion, designate particular groups associated with a current or former affiliate of Eastman Kodak Company as being eligible to participate in the Plan.  Such groups may include, but are not limited to, retirees, LTD recipients, former employees who were terminated pursuant to a layoff or divestiture, or former employees who are eligible for continued health care coverage under COBRA.  The Plan Administrator shall determine which provisions of the Plan apply to the member of such a group, provided that all similarly situated members are treated in a uniform and non-discriminatory manner.

ML0587