LSK&D #: 564-7015 / 1065899
UNITED DISTRICT COURT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHN MAGEE,

      Plaintiff, Counterclaim-Defendant,

      -against-

METROPOLITAN LIFE INSURANCE
COMPANY,

      Defendant, Counterclaim-Plaintiff.
-----------------------------------------------------------------x

No. 07 CIV 8816 (WHP)

DEFENDANT, COUNTERCLAIM-PLAINTIFF'S LOCAL RULE 56.1 STATEMENT

Defendant, Counterclaim-Plaintiff Metropolitan Life Insurance Company ("MetLife") respectfully submits the following statement of undisputed material facts pursuant to Local Rule 56.1.

**The Plan**

1. The Eastman Kodak Company ("Kodak") established and maintains the Kodak Long-Term Disability ("LTD") Plan (the "Plan") to provide LTD benefits to its eligible employees. (Affidavit of Timothy Suter ("Suter Aff.") ¶ 4, Ex. B (Summary Plan Description ("SPD")), ML 611).[1] [2]

2. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (Id., SPD, ML 565)

3. The Plan is self-funded by Kodak. (Id.)

---

[1] "ML____" refers to the Bates-stamped page numbers of the Exhibits. The zeros preceding the number have been omitted.
[2] Subsequent to the commencement of plaintiff's claim, Kodak was purchased by ITT. The Plan is described in some correspondence in the claim file as the ITT Plan. (See id., ¶ 3, Ex. A (Claim File), ML 51.)

1

4. MetLife is the Plan's claims administrator pursuant to an Administrative Services Agreement ("ASA"), but does not insure Plan benefits. (Id., SPD, ML 565; ¶ 6, Ex. D ("ASA"), ML 588-94)

5. The Plan defines "Claims Administrator" as: "a person who has entered into an administrative services agreement with Kodak in accordance with which such person is responsible for the administration of claims …." (Id., Ex. C. (Plan Document), ML 568)

6. The Plan designates MetLife as its Claims Administrator and grants MetLife discretionary authority to determine eligibility for and entitlement to LTD benefits. (Id., Plan Document, ML 585).

7. The Plan further states that:

> In reviewing any claim, the Plan Administrator or his designated representative shall have full discretionary authority to determine all questions arising in the administration, interpretation, and application of the Plan, including any ambiguities in Plan language. In all such cases, the decision of the Plan Administrator or his designated representative shall be final and binding upon all parties.

(Id., Plan Document, ML 586)

8. The SPD states:

> The plan administrator's authority is fully discretionary in all matters related to the discharge of his or her responsibilities and the exercise of his or her authority under the Plan including, without limitation, his or her construction of the terms of the Plan and his or her determination of eligibility for coverage and benefits. Under some plans, the plan administrator delegated his or her authority to a claims administrator….
>
> It is the intent of each plan that the decision of the plan administrator (or the party to whom the decision-making authority was delegated), and his or her actions with respect

2

> to the plan, will be conclusive and binding upon all persons having or claiming to have any right or interest in or under the plan, and that no such decision or action will be modified upon judicial review unless such decision or action is proven to be arbitrary or capricious.

(Id., SPD, ML 615)

9. The Plan provides that "[c]laims for LTD Plan benefits are administered by MetLife," that MetLife determines whether an employee is eligible for LTD benefits, that "[y]our continued eligibility for LTD benefits is periodically reviewed by MetLife," and that "[i]f MetLife determines that you are no longer eligible for LTD benefits, your benefits will be terminated." (Id., SPD, ML 555, 556, 559 and 562)

10. The ASA describes MetLife as the "Named ERISA Claims Review Fiduciary." (Id., ASA, ML 594)

11. The Plan defines "Disabled," in pertinent part, as: "As a result of your condition, you are totally and continually unable to engage in gainful work …. 'Gainful work' is paid employment for which you are (or you become) reasonably qualified by education, training, or experience, as determined by MetLife." (Id., SPD, ML 556) To be "Disabled," a participant must also be under the care of a licensed physician and the participant's condition must have lasted 26 weeks or more. (Id.) The SPD advises participants that "[b]efore you receive any LTD benefits, MetLife must approve your claim." (Id., SPD, 559)

12. The Plan provides that LTD benefits are reduced by Social Security Disability Income ("SSDI") benefits. (Id., SPD, ML 560-61) If LTD benefits were overpaid due to a retroactive award of SSDI benefits, the participant is obligated to repay the overpayment. (Id., SPD, ML 561)

3

**Magee's LTD Benefits Claim**

13.     Magee (date of birth December 27, 1959) was employed by Kodak as a Program Assurance Manager, which was classified as a sedentary job. (Suter Aff., ¶ 3, Ex. A ("Claim File"), ML 544, 536-38)  He has a B.S. in engineering. (Id., Claim File, ML 536, 541)

14.     Magee applied and was approved for LTD benefits effective September 2004 on the basis of diagnoses of Chronic Fatigue Syndrome (CFS) and depression. (Id., Claim File, ML 544-45, 409)

15.     Magee signed an agreement to reimburse the Plan if he received SSDI or other income benefits which the Plan provides are offsets to LTD benefits. (Id., Claim File, ML 543)  In return, Magee received his full LTD benefits without estimated offsets.

16.     In the course of its continuing review of Magee's claim, MetLife had the claim file evaluated by two IPCs: Dr. Amy Hopkins (Board certified in internal and occupational medicine) and Dr. Ernest Goseline (Board certified in psychiatry). (Id., Claim File, ML 384-86; 365-67)

17.     In a report dated November 5, 2004, Dr. Hopkins opined that Magee's CFS diagnosis was unsubstantiated and found no objective medical evidence to support the symptoms Magee reported. (Id., Claim File, ML 384-86)

18.     MetLife sent Dr. Hopkins' report to Dr. David Bell, Magee's treating physician, a pediatrician, who claimed expertise in treating CFS. (Id., Claim File, ML 392)  Dr. Bell disagreed with Dr. Hopkins and opined that Magee's CFS condition was debilitating. (Id., Claim File, ML 397)

4

19.	In a report dated December 13, 2004, Dr. Goseline opined that Magee was disabled due to depression. (Id., Claim File, ML 365-67)

20.	MetLife approved Magee's disability benefits claim through August 2006. (Id., Claim File, ML 20)

21.	The Social Security Administration ("SSA") sent Magee a "Notice of Disapproved Claim" dated November 12, 2004 stating in part: "We have determined that your condition is not severe enough to keep you from working." (Id., Claim File, ML 378-81)

22.	In April 2006, Magee was awarded SSDI benefits (both primary and dependent) retroactive to June 2004, thereby generating an overpayment of LTD benefits. (See id., Claim File, ML 301-07, 229-263, 265.)

23.	Although granting SSDI benefits, the SSA's decision letter noted that both a psychologist and an internist who each examined Magee on behalf of the SSA "found [no] significant objective evidence to support chronic fatigue or fibromyalgia ....." (Id., Claim File, ML 304)

24.	Based on information received in April 2006 from Dr. Alice Tariot, Magee's treating psychiatrist, documenting Magee's improved psychiatric condition, MetLife found that Magee's mental condition appeared stable and his diagnosis of major depression was no longer severe enough to be disabling. (Id., Claim File, ML 296-97, 32, 34) MetLife's nurse consultant recommended a review by an IPC with respect to the CFS diagnosis. (Id., Claim File, ML 34)

25.	MetLife sent the file to IPC Dr. Dennis Payne, Board certified in rheumatology and internal medicine, for an evaluation. As part of his review, Dr. Payne

5

conducted a teleconference with Dr. Bell, who admitted that he had found no objective findings of muscle and joint damage to substantiate Magee's reported symptoms. In his report dated May 3, 2006, Dr. Payne observed that the CFS diagnosis was based entirely on subjective symptomology and that no objective medical evidence supported Magee's claimed inability to work. (Id., Claim File, ML 269-72)

26.    MetLife sent Dr. Payne's report to Dr. Bell for comment. (Id., Claim File, ML 267) Dr. Bell replied by letter dated May 15, 2006, disagreeing with Dr. Payne's opinion that Magee was able to work and reaffirming Magee's diagnosis of CFS. (Id., Claim File, ML 264)

27.    Dr. Payne reviewed Dr. Bell's letter and tried unsuccessfully to contact him again. Dr. Payne reaffirmed his opinion that Magee was not disabled, noting that Dr. Bell had not submitted any additional information regarding objective findings to support "any degree of disability present in Mr. Magee." "[E]ven with a syndrome, as with a well defined illness or disease," Dr. Payne stated, "there must be objective measures that support functional restrictions or limitations…." (Id., Claim File, ML 224-25)

28.    By letter dated July 11, 2006, MetLife informed Magee that his benefits were being terminated effective August 2006. (Id., Claim File, ML 218-20) MetLife's letter informed Magee of his right to appeal the claim determination. (Id.)

29.    Magee requested a copy of the claim file, which was sent to him on or about August 15, 2006. (Id., Claim File, ML 209) He filed an appeal in December 2006 (id., Claim File, ML 205-06) and submitted additional information. (See id., ML 121-199.)

6

30.     MetLife sent the file, including the additional submissions from Magee, to another IPC, Dr. Joel Maslow, Board certified in infectious diseases and internal medicine. In a report dated March 22, 2007 (see id., Claim File, ML 109-14), Dr. Maslow noted that, in a teleconference, Dr. Bell stated that depression was not the cause of Magee's disabling symptoms. Dr. Bell again opined that Magee was unable to function except for about two hours each day due to CFS. Dr. Maslow opined that since the CFS diagnosis was one of exclusion, and Dr. Bell had not excluded depression as a cause of Magee's symptoms, "Mr. Magee does not meet the criteria for this syndrome." (Id., Claim File, ML 113) Dr. Maslow further stated: "Many of the symptoms said to be affecting the claimant are not supported by objective evidence such as physical exam with normal musculoskeletal findings and no cognitive dysfunction on exam." (Id.) Dr. Maslow opined that, based on the medical documentation, Magee was not functionally impaired from working at a sedentary job. (Id.)

31.     Based on the entirety of medical evidence in the claim file, MetLife determined to uphold its decision to terminate Magee's LTD benefits. (See id., Claim File, ML 78-83.)

32.     In its letter dated May 7, 2007, MetLife stated that it based its determination on the lack of medical documentation supporting claimed functional limitations or restrictions beyond August 31, 2006. In particular, MetLife noted that Magee was no longer being treated for depression (one of his initial diagnoses and the basis for the initial approval of his disability claim) and, in fact, Dr. Bell had indicated that depression was not causing any disabling symptoms; that physical exams detected no musculoskeletal problems; and that tests found no cognitive deficits. (Id.)

7

33.  With respect to the overpayment of LTD benefits due to Magee's receipt of retroactive SSDI benefits, MetLife informed Magee by letter dated May 11, 2007 that the $16,831.21 balance of the overpayment remained outstanding.[3]  (Id., Claim File, ML 71)

Dated:  New York, New York
September 2, 2008

Respectfully submitted,

*Allan M. Marcus (signature)*

Allan M. Marcus (AM-9027)
LESTER SCHWAB KATZ & DWYER, LLP
120 Broadway
New York, New York  10271
(212) 964-6611

*Ian S. Linker (signature)*

Ian S. Linker (IL-7765)
METROPOLITAN LIFE INSURANCE COMPANY
27-01 Queens Plaza North
Long Island City, New York 11101
(212) 578-6809

Attorneys for Defendant, Counterclaim-Plaintiff
Metropolitan Life Insurance Company

TO:

Jason Newfield, Esq.
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue
Garden City, NY 11530
Attorneys for Plaintiff, Counterclaim-Defendant

---

[3] The original overpayment amount was $51,886.21, but Magee repaid all but $16,831.21. (See id., Claim File, ML 280-81, 70, 226.)