UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
JOHN MAGEE,                                    :
                                               :        07 CV 8816 (WHP)
                            Plaintiff,         :
                                               :
              - against -                      :        **ECF**
                                               :
METROPOLITAN LIFE INSURANCE:
COMPANY,                                       :
                                               :
                                               :
                            Defendant.         :
-----------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**


                              Frankel & Newfield, P.C.
                              Attorneys for Plaintiff
                              585 Stewart Avenue
                              Garden City, NY 11530


Of Counsel:

Jason Newfield (JN5529)
Justin Frankel (JF5983)

## TABLE OF AUTHORITIES

Page

Abrams v. Cargill, 395 F.3d 882, 887 (8th Cir. 2005)                    23

Acuff-Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140 (2d Cir. 1998)       25

Adams v. Met Life, 2007 U.S. Dist. LEXIS 56912 (M.D. La. 2007)................... 20, 21

Addis v. The LTD. Long Term Disability Program, 425 F.Supp.2d 610 (E.D. Pa.   22
2006)

Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995)                          7

Audino v. Raytheon Co., 129 Fed. Appx 882 (5th Cir. 2005)               22

Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)               21

Booth v. AT&T Long Term Disability Plan, 2008 U.S. Dist. LEXIS 26221 (D. Ar.   8
2008)

Borys v. Met Life, 2005 U.S. Dist. LEXIS 8013 (S.D. Oh. 2005)...................... 10

Calvert v. Firstar Fin. Inc., 409 F.3d 286, 295 (6th Cir. 2005)          13

Carugati v. The Long Term Disability Plan, 2002 U.S. Dist. LEXIS 4774 (N.D. Ill.   14
2002)

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)                            7

Chan v. Hartford Life Inc. Co., 2004 U.S. Dist. LEXIS 17962 (S.D.N.Y. 2004)   18

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-17 (1971)........   9

Cohen v. Met Life, 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. 2007)...................   10

Connors v. Connecticut General Life Ins. Co.  272 F.3d 127 (2d Cir. 2001)...........   17-19

Crean v. N.Y. City Dist. Council of Carpenters, 1996 U.S. Dist. LEXIS 9635   16
(S.D.N.Y. 1996)

Darland v. Fortis Benefits Ins. Co., 317 F.3d 516, 529 (6th Cir. 2002)    13

Daubert v. Merrill Dow Pharm., 509 U.S. 579 (1993)                       24

DiPietro v. Prudential Ins. Co. of America, 2004 U.S. Dist. LEXIS 5004 (N.D. Ill.   14
2004)

Ebert v. Reliance Standard Life Ins. Co., 171 F.Supp. 2d 726 (S.D. Oh. 2001)    15

Elliot v. Met Life, 473 F.3d 613 (6th Cir. 2006)……………………………………...    10

Erlandson v. Liberty Life Assur. Co., 320 F.Supp.2d 501, 509 (N.D. Tex. 2004)    8

Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 817 (7th Cir. 2002)    8

Giannone v. Met Life, 311 F.Supp.2d 168 (D. Mass. 2004)…………………………    10

Gregg v. Transportation Workers, 343 F.3d 833 (6th Cir. 2003)    11

Henar v. First UNUM Life Ins. Co., 2002 U.S. Dist. LEXIS 17585 (S.D.N.Y. 2002)    18

Hightshue v. AIG Life Ins. Co., 135 F.3d 1144 (7th Cir. 1998)    23

Jagielski v. Met Life, 2007 U.S. Dist. LEXIS 62660 (W.D. Pa. 2007)……………...    10

Krizek v. CIGNA Group Ins., 345 F.3d 91, 102 (2d Cir. 2003)……………………..    18

Ladd v. ITT Corp., 148 F.3d 753m 756 (7th Cir. 1998)    13

Lamanna v. Special Agents Mt. Benefits Ass'n, 546 F.Supp.2d 261 (W.D. Pa. 2008)    21

Lee v. Paul Revere Life Ins. Co., 2004 U.S. Dist. LEXIS 13616 (E.D.N.Y. 2004)…………………………………………………………………………...    17

Loucks v. Liberty Life, 2004 U.S. Dist. LEXIS 19664 (W.D. Mich. 2004)    22

Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)    18

Masella v. Blue Cross Blue Shield of Conn., Inc., 936 F.2d 98 (2d Cir. 1991)    25

McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 589 (8th Cir. 2002)    19

Met Life v. Glenn, 554 U.S. ___, 2008 U.S. LEXIS 5030 (2008)………………..……    passim

Mikrut v. UNUM Life Ins. Co. of Amer., 2006 U.S. Dist. LEXIS 92265 (D. Conn. 2006)………………………………………………………………………    12

Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997)    16

Moeckel v. Caremark, Inc., 2007 U.S. Dist. LEXIS 83908 (M.D. Tenn. 2007)          8

Neely v. Pension Trust Fund, 2004 U.S. Dist. LEXIS 27777 (S.D.N.Y. 2004)........  17

Paese v. Hartford Life and Accident Ins. Co., 2004 U.S. Dist. LEXIS 6040
(S.D.N.Y. 2004)...........................................................................................  22

Pelchat v. UNUM Life Inc. Co. of America, 2003 U.S. Dist. LEXIS 8095 (N.D.       15
Oh. 2003)

Petroff v. Verizon North, 2004 U.S. Dist. LEXIS 8138 (W.D. Pa. 2004)             15

Pierce v. Ky. Utilz. Long Term Disability Plan, 2005 U.S. Dist. LEXIS 1786 (E.D.  13
Ky. 2005)

Quigley v. UNUM Life Ins. Co. of Amer., 340 F.Supp.2d 215 (D. Conn. 2004)        23

Rappa v. Conn. Gen Life Ins. Co., 2007 U.S. Dist. LEXIS 65346 (E.D.N.Y. 2007)    19

Reipsa v. Met Life, 2002 U.S. Dist. LEXIS 13188 (N.D. Ill. 2002)....................  10

Robinson v. Met Life, 2006 U.S. Dist. LEXIS 29648 (S.D.N.Y. 2006)               20

Scannell v. Met Life, 2003 U.S. Dist. LEXIS 20749 (S.D.N.Y. 2003)..................  9

Sexton v. Deloitte & Touche Ltd., 2003 U.S. Dist. LEXIS 5185 (D.Minn. 2003)      21

Shelden v. Barre Belt Granite, 25 F.3d 74, 80 (2d Cir. 1994)                     16

Smith v. Chamption Int'l Corp., 2008 U.S. Dist. LEXIS 65346 (D. Conn. 2008)     10, 19

Stellas v. Met Life, 2005 U.S. Dist. LEXIS 34808 (E.D. Tenn. 2005)              13

Stup v. UNUM Life Ins. Co., 390 F.3d 301 (4th Cir. 2004)                        23

Teplick v. Boeing Co. Emple. Health & Welfare Ben. Plan, 2004 U.S. Dist. LEXIS   8
8748 (D. Or. 2004)

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)...............................  9-10

Vick v. Met Life, 417 F.Supp.2d 868 (E.D. Mich. 2006)                            22

Whealen v. Hartford Life & Acc. Ins. Co., 2007 U.S. Dist. LEXIS 51335 (C.D. Cal.  5
2007)

White v. Airline Pilots Assoc., 2005 U.S. Dist. LEXIS 5980 (N.D. Ill. 2005).........  10

Wible v. Aetna Life Inc. Co., 375F.Supp.2d 956 (C.D. Cal 2005..................... 14

Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998) 20

Zervos v. Verizon New York Inc., 277 F.3d 635 (2d Cir. 2002) 16

## INTRODUCTION

Plaintiff John Magee ("Magee") respectfully submits this memorandum of law in support of his motion for summary judgment. This action is governed under 29 U.S.C. §1001 et. seq. (Employee Retirement Income Security Act of 1974, hereinafter "ERISA"). Magee seeks relief pursuant to ERISA § 502(a)(10(B). Magee was an employee of Eastman Kodak ("Eastman"), and during Magee's employment, he was eligible for coverage under a long term group disability income policy for the benefit of certain eligible Eastman employees. Thus, Magee was a beneficiary, entitled to ERISA's protections, including the right to receive a full and fair review of his claim by a neutral fiduciary.

On June 19, 2008, the United States Supreme Court decided Met Life v. Glenn, 128 S.Ct. 2343 (2008), affirming the Sixth Circuit Court of Appeal's decision to award benefits to a claimant whose long term disability claim had been terminated by Met Life. As a result of Glenn, the landscape for ERISA disability cases has changed in the Second Circuit. Unlike before, insurance companies now have to do more than simply satisfy a reasonableness standard; rather, the Court must conduct a searching review of the lawfulness of the claim determination to determine whether the decision constitutes an "abuse of discretion".

Here, however, Magee urges that no discretion needs to be afforded to Met Life's decision to terminate his claim, as Met Life was not vested with discretion in the appropriate plan documents. As argued below, Met Life cannot rely upon an Administrative Services Agreement as the basis of discretion. Accordingly, this Court must conduct a de novo consideration as to whether Magee continued to be disabled under the policy. Under the de novo standard of review, there can be no doubt that Magee is disabled. However, even under an abuse of discretion standard of review, it is clear that Met Life abused its discretion in terminating the claim, despite the wealth of support for

the claim.

## STATEMENT OF FACTS

Magee, an eligible employee of the Eastman LTD plan, became disabled under the plan, with benefits effective September 27, 2004, following the satisfaction of a 180 day elimination period. ML04092[1]. Magee left work on December 12, 2003 due to his impairment.  During the course of Magee's claim, his treating physician offered information to support his diagnosis of Chronic Fatigue Syndrome, noting that both The Center for Disease Control and the National Institute of Health have both stated that Chronic Fatigue Syndrome is a serious and debilitating illness, and that Magee fit the criteria. ML0397.  Magee's physician provided numerous letters, assessments of functionality (ML0411-13), and articulation of the impact of Chronic Fatigue Syndrome upon Magee's disability to Met Life (ML0418-20), as well as substantial medical records from office evaluations.

After conducting a claim review process, Defendant accepted liability of the claim based upon chronic fatigue syndrome and depression. ML0008-09. In accepting liability of the claim, Met Life determined that Magee's "medical is supportive of severity of condition." Id. Met Life further noted that "EE suffers from severe widespread musculoskeletal pain and severe disabling fatigue sleeping up to 14 hours a day, difficulty with short-term memory and concentration." Id.   The decision to provide Magee benefits was communicated to him via letter dated September 20, 2004. ML0409.

Moreover, during the pendency of Magee's claim, Social Security determined that Magee was unable to engage in any substantial gainful activity, and awarded him disability benefits effective December 12, 2003 (with the same onset date as his last day worked).  ML0303-08.  The

---

[1]     All references to ML- - - are to the record compiled by Met Life, with ranges of ML0001- ML0554. Per discussion with counsel for Met Life, the record is being submitted by Met Life in connection with its motion for summary judgment.

Administrative Law Judge who conducted the hearing on Magee's Social Security application determined that Magee "has demonstrated that he lacks the residual functional capacity to perform the requirements of any past relevant work" (ML0305), and that he "cannot maintain the minimal sedentary level of exertional activities" (ML0306) , and that "fatigue and/or pain would interfere with maintaining a normal work attendance." (ML0306).  As a result of the Social Security award of benefits, Defendant was able to reduce its client Eastman's financial obligations to Magee, offsetting his present LTD benefits and seeking a recovery of alleged overpaid benefits.

In support of Magee's claim, his treating physician completed a "Met Life Chronic Fatigue Syndrome Initial Functional Assessment".  ML0315-18.  On that form, his physician articulated responses to Met Life's inquiries, including that Magee was "unable to sustain activity", suffered "extreme fatigue", had "cognitive difficulties", and was "unlikely to improve".  ML0316.  Magee's doctor noted on this form that Magee suffered fatigue, pain, post-exertional malaise, energy loss and unrefreshed sleep between 76% and 100% of the time, the most severe category on the form.  ML0317.  Met Life also received the results from the Krupp Fatigue Questionnaire[2] and the SF-36[3], two known measures for Chronic Fatigue Syndrome impairment.  ML0322-27.  Met Life was also provided with an interpretation of results from specific disability questionnaires.  ML0347.  Magee's Krupp Fatigue score was 56, which is in the disabled range.  Id.  His modified Karnofsky score is 25 percent also in the disabled range.  Id.  Lastly, his SF-36, an extremely well validated indicator of overall disability showed marked disability.  Id.  It was noted that on the six domains of physical functioning, Magee's scoring is beyond what is usually seen in end-stage cardiac or pulmonary

---

[2]    See www.cfids.org/archives/2002rr/2002-rr4-article02.asp for a discussion of Fatigue Severity Scales.

[3]    See www.biomedcentral.com/1741-7051/3/19 for a discussion of the SF-36

disease, while his two emotional functioning scales demonstrate the lack of an emotional component to his impairment. Id.

Despite the support from his doctor, and Met Life's previous acceptance of liability of the claim, and Social Security's finding of total disability, Magee's claim was thereafter terminated, on July 20, 2006. ML0218-20. In terminating Magee's claim, Met Life undertook to have hired physicians conduct paper reviews of his claim. One such hired physician, Dr. Amy Hopkins ("Hopkins"), is well known within the disability community, as she regularly reviews files for Met Life and other insurers. In fact, Met Life has admitted that Hopkins has performed over 1500 reviews for Met Life.[4]   Moreover, Met Life hired Hopkins for "part-time work as a physician consultant", work that began in September 1999.[5]   The contract between Met Life and Hopkins reveals her inherent bias against claimants, where it notes "[l]ike you, we believe that work can be therapeutic and that illness behavior and dependency are damaging." It further notes that "[w]hat we do at Met Life has obvious economic implications, but we have no doubt that our efforts to 'put abilities to work' also benefit people." During the course of the claim, Hopkins issued one of her typical "template" reports, opining that Magee is out of work due to a variety of self-reported symptoms with no objective support. ML0386.[6]   Met Life also relied upon Dr. Dennis Payne, a paid medical provider known to provide biased reports for insurance companies. see Whealen v. Hartford Life & Acc. Ins. Co., 2007 U.S. Dist. LEXIS 51335 (C.D. Cal 2007)(critical of Dr. Payne's

---

[4]    Attached hereto is Met Life's response to Request for Admissions in the Asuncion v. Met Life action, 06-CV-13144 (SAS). See Response # 27 (Exhibit "A")

[5]    Attached hereto is a copy of a contract between Met Life and Hopkins (Exhibit "B").

[6]    As discussed *infra*, Hopkins' report is similar to reports she has generated on behalf of insurers in the past.

incomplete and biased evaluation of records). Dr. Payne issued an initial report (ML0269-72) and a supplemental report rebutting Dr. Bell's response to Dr. Payne's opinion. ML0224-25.

In connection with his appeal, Magee submitted additional medical evidence from Dr. David Bell , a leading clinician of patients with Chronic Fatigue Syndrome[7]. ML0121-0189. As part of the appeal, Dr. Bell submitted a letter indicating that Magee had a circulating blood volume performed at the University of Rochester by the chromium 51 method, which revealed abnormally low blood volume. ML0192. Dr. Bell noted that these findings are consistent with "severe chronic fatigue syndrome"and cited published literature supporting this position. Id.

Dr. Bell also submitted a letter of support for Magee's claim, providing discussion and offering references from peer reviewed literature supporting the diagnosis of Chronic Fatigue Syndrome, his credentials for diagnosing Chronic Fatigue Syndrome, Magee's diagnosis of Chronic Fatigue Syndrome, Magee's disabling symptoms and supportive medical evidence for Magee's impairment. ML0194-97. Lastly, Magee's appeal also consisted of a personal statement, supportive statements from Magee's wife, niece, former co-worker and friends. ML0182-89.

On consideration of Magee's appeal, Met Life engaged Dr. Joel Maslow, through Elite Physicians, Ltd. (a subsidiary of NMR)[8] to perform a paper review of the medical records, and to

---

[7]     Dr. David Bell's Curriculum Vitae is within the administrative record (ML0087-0101) and demonstrates his involvement with Chronic Fatigue Syndrome since 1987, and includes lectures, reviews, publications and public service concerning this severe medical condition.

[8]     NMR is well known in the disability community, to provide doctors that deliver results for Met Life. In 2002, Met Life referred 296 claims to NMR, paying them a total of $ 174,485; in 2003, Met Life referred 922 claims and paid NMR $ 568,305; in 2004, Met Life referred 1,500 claims and paid NMR $ 934,690; in 2005, Met Life referred 3209 claims and paid NMR $ 2,063,890; and in 2006, Met Life referred 4,441 claims and paid NMR $ 2,780,795.    This information was derived from discovery responses in an action entitled Cosgrove v. Raytheon Co., 06-CV-2107, N.D. Ala. Dist. Court, and executed on May 24, 2007 (Exhibit "C").

conduct a peer to peer discussion with Dr. Bell. His report is reflected in the claim file. ML0109-0114. Dr. Maslow spoke with Dr. Bell on March 19, 2007. ML0109. In his report, Dr. Maslow indicates that Dr. Bell summarized his care of Magee and Magee's symptoms, and provided his rationale for the diagnosis of CFS. Id. Dr. Maslow, despite Dr. Bell's well articulated support and his substantial experience in evaluating and treating Chronic Fatigue Syndrome patients, determined that Magee did not meet the criteria to be diagnosed with Chronic Fatigue Syndrome. ML0113. Dr. Maslow's conclusion that Magee did not meet the criteria for Chronic Fatigue Syndrome deviated not only from Dr. Bell's conclusion, but with that of Dr. Payne, who determined that the diagnosis existed (although he did not believe it supported an impairment in functionality)(ML0271), and with Dr. Goseline, who stated that the diagnosis of Chronic Fatigue Syndrome was established with "extensive information". ML0366.

Met Life forwarded Dr. Maslow's assessment to Dr. Bell for comment. Dr. Bell's April 13, 2007 response letter notes that he has written "numerous letters detailing his assessment" of Magee, and reflects that he had a discussion with Dr. Maslow concerning Magee's disability. ML0086. Dr. Bell noted that Dr. Maslow had not read Dr. Bell's reports and seemed completely unfamiliar with the diagnosis of chronic fatigue syndrome. Id. Dr. Bell also criticized Dr. Maslow for lacking familiarity with the diagnostic criteria for Chronic Fatigue Syndrome that was assessed by the Centers for Disease Control, and the roughly 1000 peer reviewed articles. Id.

Most significantly, Dr. Bell reaffirmed his opinion that Magee is "completely and totally disabled due to Chronic Fatigue Syndrome" with "objective medical findings" that had previously been detailed. ML0086. He closed the letter by inviting Met Life to contact him with any specific questions. Id.

Following submission of his appeal, and despite the unwavering support for Magee's claim by Dr. Bell, Met Life advised Magee by letter dated May 7, 2007 that the decision to terminate his benefits had been upheld. ML0072-83. This litigation followed.


## SUMMARY JUDGMENT STANDARDS

Summary judgment may only be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See Celotex v Corp. v. Catrett, 477 U.S. 317 (1986). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party. See Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995). Here, there is substantial evidence demonstrating that Magee was disabled at the time his claim was terminated and thus he is entitled to summary judgment.


## ARGUMENT

I.    **THIS COURT SHOULD DECIDE THIS CASE UPON THE *DE NOVO* STANDARD OF REVIEW**

An important issue to determine prior to deciding whether this case can be resolved on summary judgment, or whether a bench trial is appropriate, is the appropriate standard of review to be applied. Met Life has blanketly asserted to the Court that it has the necessary discretion to be afforded a more favorable abuse of discretion standard of review. However, a review of the documents will reveal that Met Life has not been provided with the necessary discretion in appropriate form to be afforded such a deferential standard of review.

The purported basis upon which Met Life has asserted it has the necessary discretionary authority is predicated upon an Administrative Services Agreement ("ASA") between Met Life and Eastman, which is not considered a plan document. In fact, the actual plan documents are silent as to Met Life's purported discretion. Thus, to the extent that Met Life is seeking to endow its claim determination with discretion predicated upon a document which is not a plan document, such efforts cannot be sustained, and the appropriate standard of review should be *de novo*. Cases which have considered this precise issue support Plaintiff's position, almost universally. Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 817 (7th Cir. 2002)(holding that the ASA is not a plan document for purposes of holding its terms against a plan participant or beneficiary); Erlandson v. Liberty Life Assur. Co., 320 F.Supp.2d 501, 509 (N.D. Tex. 2004)(holding that ASA which was not provided to plan participants cannot be considered part of an ERISA plan); Teplick v. Boeing Co. Emple. Health & Welfare Benefit Plan, 2004 U.S. Dist. LEXIS 8748 (D. Or. 2004)(holding that the ASA is more properly viewed as a contract for services between employer and insurer and not a plan document); see e.g. Moeckel v. Caremark, Inc., 2007 U.S. Dist. LEXIS 83908 (M.D. Tenn. 2007).

Moreover, Met Life has urged other courts, when it needed to make the argument, that a servicing agreement is not a plan document for ERISA purposes. See Booth v. AT&T Long Term Disability Plan, 2008 U.S. Dist. LEXIS 26221, *48 (D. Ar. 2008). As stated by Met Life in Booth, "[s]ince the ASA is not a plan document, it cannot be used to determine the standard of review to be applied to a claim administrator's decision." See Exhibit "D", Reply Brief by counsel for Met Life, filed on February 29, 2008. Accordingly, Met Life should be estopped from arguing to the contrary in the instant action, where the instant action was pending during the time that Met Life took this position in Booth. Thus, the appropriate standard of review should be *de novo*.

II.      **FOR ABUSE OF DISCRETION CASES, THE SUPREME COURT HAS CREATED A NEW PARADIGM FOR DETERMINING WHETHER TO UPHOLD A CLAIM TERMINATION IN THE SECOND CIRCUIT**

On June 19, 2008, the United States Supreme Court decided Met Life v. Glenn, and as a result, courts in the Second Circuit now have judicial precedent upon which to determine ERISA disability cases that differs from our prior precedent. Effectively, the Supreme Court has elucidated several critical points. Here, despite the fact that Eastman pays benefits while Met Life decides eligibility for benefits, the analysis derived from the Court's decision in Glenn remains.

In Glenn, the Court specifically held that even where the employer pays benefits which are decided by an insurer like Met Life, "we nonetheless continue to believe that for ERISA purposes a conflict exists. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." Id. at 2349. The Court also emphasized that "ERISA imposes higher-than-marketplace quality standards on insurers", which "sets forth a special standard of care upon a plan administrator, namely that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan." Id. at 2349-50, quoting ERISA §1104(a)(1).

The Court cited to Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-17 (1971), and Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951) to discuss how the review of these types of cases should be thorough and probing and not simply a search for reasons to uphold the claim decision. 128 S.Ct. at 2351. In informing that the standard must be searching, the Supreme Court noted that "this kind of review is no stranger to the judicial system." Id. (addressing both trust law and administrative law and citing the Restatement (Second) of Trusts).

Thus, despite the fact that Met Life did not fund the benefits provided to Magee, the conflict of interest remains a factor that must be considered in reaching a determination as to whether Met

Life abused its discretion.[9] The significance of the conflict will come into further consideration upon the review of the other claim factors - several factors which the Supreme Court touched upon and others existing here but were either not present or not discussed by the Court.

In this case, Met Life's claim handling bias was so pervasive that the Court must find Met Life to have abused any discretion it may have been afforded.[10] As argued below, Met Life failed to provide a neutral, full and fair review of Magee's claim, and committed a number of procedural irregularities, such that its claim determination cannot withstand scrutiny. Moreover, like the plaintiff in Glenn, Magee was awarded Social Security disability benefits, at the direct requirement of Met Life (ML0409), which also provided Magee with an advocate for his pursuit of Social Security. Met Life also graciously embraced the financial component of the Social Security award for its client Eastman, yet closed its eyes to the substance of Social Security's findings. In light of Glenn, such conduct by Met Life can no longer be countenanced.

---

[9]    On cross-motions for summary judgment, the Court will likely give substantial weight to the conflict in evaluating Met Life's motion, and de minimis weight in evaluating Magee's motion. See Smith v. Champion Int'l Corp., 2008 U.S. Dist. LEXIS 65346, * 29 (D. Conn. 2008).

[10]    There are a multitude of cases finding Met Life's conduct biased. See Cohen v. Met Life, 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. 2007); Reipsa v. Met Life, 2002 U.S. Dist. LEXIS 13188 (N.D. Ill. 2002)(finding relationship with NMR troubling); ; Giannone v. Met Life, 311 F.Supp.2d 168 (D. Mass. 2004); White v. Airline Pilots Assoc., 2005 U.S. Dist. LEXIS 5980 (N.D. Ill. 2005)(finding claim decision "patently unreasonable"); Adams v. Met Life, 2007 U.S. Dist. LEXIS 56912 (M.D. La. 2007); Elliot v. Met Life, 473 F.3d 613 (6th Cir. 2006); Borys v. Met Life, 2005 U.S. Dist. LEXIS 8013 (S.D. Oh. 2005); Jagielski v. Met Life, 2007 U.S. Dist. LEXIS 62660 (W.D. Pa. 2007), vacated on joint application. While surely Met Life will seek to combat these cases with others that ruled in its favor, an uphold of a claim decision is not evidence that the decision was either correct or not biased - merely that it was not an abuse of discretion. Now, with Glenn, it is possible many of those cases would be decided differently.

**III.**    **DEFENDANT'S CLAIM HANDLING DEMONSTRATES
A BIASED PROCESS**

Met Life failed to afford Magee a full and fair review of his claim, by ignoring Social

Security's finding of significant impairment preventing him from working in any occupation, in

imposing requirements upon Magee that go beyond the terms of the policy, by failing to consider

Magee's credible subjective complaints (as found by Social Security), and otherwise by failing to

act as a neutral fiduciary. Rather, Met Life acted as an interested party influenced by the conflict of

interest, which was a substantial factor in not providing Plaintiff with a full and fair review of his

claim and in reaching a decision that was result oriented, unreasonable, and an abuse of discretion.

Under the standard espoused in <u>Glenn v. Met Life</u>, 128 S. Ct. 2343 (2008), Met Life's

conflict of interest is a factor to be considered by this Court, but even more significantly to the

determination in this case are the following procedural irregularities in the handling of Magee's

claim, which strongly support a finding that Met Life's decision was an abuse of discretion. Thus,

notwithstanding Magee's entitlement to a neutral, full and fair review, Met Life improperly:

- Failed to consider Social Security's finding of Magee's disability, despite its willingness to
accept the financial benefits for its client, Eastman, of the determination;

- Selectively reviewed, and largely ignored the medical materials in an effort to develop
evidence to support the termination of the claim - rather than neutrally developing the
medical evidence to formulate an appropriate claim determination after a full and fair review
of the material;

- Required that Magee provide "objective" evidence in support of his claim, even though the
policy at issue has no such requirement and the condition at issue, Chronic Fatigue
Syndrome, does not have objective criteria, but is rather a diagnosis of exclusion;

- Terminated Magee's claim despite no improvement in his medical condition, after previously
acknowledging the severity of his impairment; and

- Failed to utilize appropriately trained personnel to perform a review of Magee's claim, even
though ERISA requires the utilization of appropriately trained personnel. Rather, Met Life
relied upon biased and well known insurance pandering paper reviewing doctors to provide

medical opinions that were result oriented.

1.    **DEFENDANT REFUSED TO CONSIDER SOCIAL SECURITY FINDINGS, DESPITE MANDATING MAGEE'S APPLICATION FOR SOCIAL SECURITY AND ITS FULL WILLINGNESS TO ACCEPT THE FINANCIAL BENEFIT OF THE OFFSET PROVISIONS**

Met Life, as a condition of awarding long-term disability benefits, required Magee to apply for Social Security disability benefits, or face the suspension of his benefits. ML0409. In fact, in the letter acknowledging that his long term disability claim was accepted, Met Life compelled Magee to apply for Social Security. ML0409. Met Life referred Magee to its preferred vendor, Occudata, for the pursuit of Social Security benefits. ML0371-72. Occudata regularly reported to Met Life concerning the status of Magee's Social Security claim. ML0371, 0300, 0285-86.

Magee was, in fact, awarded Social Security Disability benefits, an award that acknowledges his date of disability as his last day worked. ML0303-06. As a result, Met Life secured an offset, for its client Eastman, of its obligations resulting from Magee's award of Social Security benefits, and now even seeks a recovery of money paid to Magee. See Mikrut v. UNUM Life Ins. Co. of Amer., 2006 U.S. Dist. LEXIS 92265 (D. Conn. 2006)(finding that failure to consider SSDI while accepting the benefit of the contractual offset for claimant's receipt of benefits is evidence that conduct was actually influenced by conflict of interest); Met Life v. Glenn, 128 S.Ct. 2343, 2352 (2008)(finding that Met Life's seemingly inconsistent position concerning Social Security justified attributing significant weight to the dual role conflict of interest).

It is troubling that Met Life was perfectly willing to accept Social Security's determination finding Magee disabled for purposes of invoking the offset provisions in his policy, yet, it ignores the substance of the medical impairments which led to Social Security's finding of disability. This type of conduct has been found by courts to be particularly troubling. See Ladd v. ITT Corp., 148

F.3d 753, 756 (7th Cir.1998)(discussing the concept of judicial estoppel and noting that while it does not apply in the strictest sense, its concept supports the decision); See also Darland v. Fortis Benefits Insurance Company, 317 F.3d 516, 529 (6th Cir. 2002); and Pierce v. Ky. Utils. Long Term Disability Plan, 2005 U.S. Dist. LEXIS 1786 (E.D. Ky. 2005)(finding it inconsistent for an insurer to require claimant to apply for Social Security benefits, accept the offset from claimant's receipt of benefits and then ignore determination of Social Security as to disability).

To the extent that Social Security has determined Magee continues to be totally disabled, and for Defendant to accept the benefit of the Social Security determination for offset of benefits, it reveals that Defendant engaged in an abuse of discretion by refusing to credit (or even consider) that finding with regard to any continued eligibility for benefits. Glenn v. Met Life, 2006 Fed. Appx. 0336 (6th Cir. 2006)(discussing a number of published decisions from around the country addressing the requirement that Social Security findings at least be considered where the offset is invoked) aff'd, 128 S.Ct. 2343 (2008); See Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005); Borys v. Met Life, 2005 U.S. Dist. LEXIS 8013 (S.D. Oh. 2005); Stellas v. Met Life, 2005 U.S. Dist. LEXIS 34808 (E.D. Tenn. 2005). Met Life appears to disturbingly utilize this approach in a multitude of cases.

Glenn serves to crystallize that any one factor, including the Social Security issue, will serve as a tie-breaker in a close case. This case has a multitude of such factors, as noted above and as particularly highlighted by the Social Security issue. At worst, and for purposes of summary judgment, this case is such a close case, where prior to Glenn, Met Life's argument that the deferential standard might serve to insulate its claim determination, but now defeats Met Life's position.

## 2.    INAPPROPRIATE SELECTIVE REVIEW OF MEDICAL RECORDS

Met Life's selective review of the medical materials is further evidence that Magee did not receive a full and fair review of his claim.  See Wible v. Aetna Life Ins. Co., 375 F.Supp.2d 956 (C.D. Cal. 2005)(holding that Aetna breached its obligations, due to its financial self interest); Govindarajan v. FMC Corp., 932 F.2d 634 (7th Cir. 1991).  Here, it is readily apparent that the reviews performed by Met Life were, at best, selective.  See Carugati v. The Long Term Disability Plan for Salaried Employees, 2002 U.S. Dist. LEXIS 4774, at * 18-19   (N.D. Ill. 2002).

Met Life failed to afford a full and fair review to Magee - both by selectively reviewing the materials, and by selectively characterizing the materials.  A neutral fiduciary would not have acted in this manner.  Rather, acting neutrally, a claim fiduciary would have elicited a fair opinion of the evidence, without providing a biased editorialization of the materials.  This reveals Defendant's bias against Magee's continued benefits, and demonstrates that a full and fair review was not afforded. As the Supreme Court articulated in Met Life v. Glenn, 128 S.Ct. 2343, 2352 (2008), this factor as considered by the court below was appropriate in setting aside Met Life's discretionary decision.

Courts have time and again taken insurers to task for their selective use of records to support a denial of a claim.  See DiPietro v. Prudential Ins. Co. of America, 2004 U.S. Dist. LEXIS 5004 (N.D. Ill. 2004)(where the court held that selective review of the evidence was arbitrary and capricious, the proper remedy was an award of benefits rather than a remand to the insurer for further claim handling); Pelchat v. UNUM Life Ins. Co. of Amer., 2003 U.S. Dist. LEXIS 8095 (N.D. Ohio 2003)(collecting cases for this proposition and determining that where insurers' reliance on earlier portions of a physician report while ignoring later prognosis of same doctor, conduct was arbitrary and capricious).  The court in Pelchat therefore granted judgment to the claimant and did not remand the claim back to the administrator for further claim handling.  See Ebert v. Reliance Standard Life

Ins. Co., 171 F.Supp. 2d 726 (S.D. Ohio 2001)(finding that insurer failed to act as a neutral evaluator of the claim, where it selectively used bits and pieces of records to support a denial of a claim). Defendant's claim handling is no different than the above cases where the courts found insurers to have acted in an arbitrary and capricious manner. Now, in light of Glenn, it is apparent that such conduct cannot withstand judicial scrutiny, regardless of whether the plan contains deferential language.

Throughout Magee's claim, Defendant revealed its claim bias, by adopting and accepting certain of its paid paper reviewers' conclusions, to the exclusion of the opinions and support from Magee's treating physician, one of the leading specialists in his field, as well as the opinion of one of its own paid, paper reviewing doctors. It is simply incredulous that Met Life would discount Dr. Bell's opinions, which are supported by the leading indicators of impairment for Chronic Fatigue Syndrome, are scientifically based, and are proven instruments in analyzing impairment. Simply stated, Met Life's "pick and choose" approach to reviewing the medical records was an abuse of discretion. See Petroff v. Verizon North, 2004 U.S. Dist. LEXIS 8138, at *38-39 (W.D. Pa. 2004)(finding troubling Met Life's reliance upon Dr. Hopkins' report and her pick and choose approach). Met Life's conduct here largely parallels the conduct found troubling in the above cited cases. Troubling here is the fact that Dr. Hopkins prepared a report that is strikingly similar to other reports that she regularly prepares for Met Life and other insurers.[11]

---

[11]    Exhibit "E" is a copy of a redacted report that Dr. Hopkins generated for Prudential for a Chronic Fatigue Syndrome patient. This demonstrates her overall bias and lack of fundamental appreciation of the impacts of Chronic Fatigue Syndrome, where she blankelty states that the literature suggests that people with Chronic Fatigue Syndrome overall do much better when they continue to work and stay active in life.

3.    **DEFENDANT IMPROPERLY REQUIRED OBJECTIVE EVIDENCE**

Met Life terminated Magee's claim due to a lack of objective support for his medical condition and resulting impairment.  Met Life's file demonstrates that it required "objective documentation" - notwithstanding the lack of such language in its own policy or other plan documents.  ML0113, ML0076.  However, the policy does not require such objective proof or support for a claim to be approved for benefits.  Rather than appreciate the support provided by Dr. Bell, Met Life relied upon the paper reviewing conclusions that were formulated upon the puported lack of objective evidence to support a diagnosis.  By requiring Magee to provide objective proof of his disabling condition where the policy did not have such a requirement, and where Chronic Fatigue does not lend itself to typical objective evidence[12], Defendant violated ERISA and abused its discretion.  See Zervos v. Verizon New York, Inc., 277 F.3d 635 (2d Cir. 2002).

It was improper for Met Life to mandate objective evidence to support the claim.  See Zervos; see also Crean v. New York City Dist. Council of Carpenters, 1996 U.S. Dist. LEXIS 9635 (S.D.N.Y. 1996)(holding that a decision may be arbitrary and capricious where it "imposed a standard not required by the plan's provisions, or interpreted the plan in a manner inconsistent with its plain words." Id. at * 15, quoting Shelden v. Barre Belt Granite Employer Union Pension Fund, 25 F.3d 74, 80 (2d Cir. 1994).   Thus, in Crean, the court denied defendant summary judgment, finding that a reasonable finder of fact could conclude that the interpretation either contravened the clear language of the plan or imposed an additional requirement on its participants which was not in the plan - and was thus arbitrary and capricious.  Crean, at *16.

It can hardly be disputed that here, Met Life either injected a claim requirement beyond the language called for in the policy, or relied upon an interpretation of the policy that contravened the

---

[12]    Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997).

clear language of the plan.  Lee v. Paul Revere Life Ins. Co., 2004 U.S. Dist. LEXIS 13616, * 17

(E.D.N.Y. 2004)(noting that actions of an insurer may be arbitrary and capricious where it "imposes

a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with

its plain words.").  Hence, Met Life's conduct was improper and constitutes an abuse of discretion.

Met Life injected this requirement because it was not acting as a neutral fiduciary, but, rather,

as an interested party.  In support of his claim, Magee provided strong clinical and subjective

support, as well as test results that are well documented instruments of impairment for Chronic

Fatigue Syndrome.  Contrary to Met Life's position, the quantity and quality of medical support for

Magee's continued disability was significant.  Thus, his burden of proving his eligibility for benefits

was met.  Met Life simply refused to accept this information, because to do so would negatively

impact its relationship with its client Eastman.

Met Life acted contrary to law by refusing to consider and afford significant weight to

Plaintiff's complaints, which were contained within statements submitted by the claimant during the

administrative process and at the specific request of Met Life (ML0218), and contained in the

records of her physicians.  See Connors v. Connecticut General Life Ins. Co. 272 F.3d 127 (2d Cir.

2001); see also Neely v. Pension Trust Fund, 2004 U.S. Dist. LEXIS 27777, at *26-27 (S.D.N.Y.

2004)(holding that the committee failed to consider all of the pertinent information regarding the

claimant's medical condition - and thus failed to afford a full and fair review).  Magee's supportive

material, if viewed neutrally, should have supported the continuation of benefits.  Met Life, acting

in its own interests, failed to comply with the law and failed to view the evidence neutrally and

consider Magee's subjective complaints.  In addition, Met Life's review of Magee's support for his

claim was to essentially ignore those aspects which supported the continuation of benefits - including

the well articulated medical reports from Dr. Bell addressing impaired physical and cognitive

problems.  See Henar v. First Unum Life Ins. Co., 2002 U.S. Dist. LEXIS 17585 (S.D.N.Y. 2002)(finding that insurer ignored support where it was not mentioned in the termination letter or the appeal decision letters).  Guiding the Henar court's conclusion that the decision was arbitrary and capricious was a disregard for the opinions of the treating physicians, as well as the fact that the record failed to reflect that the insurer's medical personnel adequately considered anything other than the physical aspects of employment.  Id. at * 18-19.

In fact, the Second Circuit has articulated that subjective complaints may even alone constitute sufficient evidence of disability.  Krizek v. CIGNA Group Ins., 345 F.3d 91, 102 (2d Cir. 2003); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  The analysis performed in Chan v. Hartford Life Ins. Co., 2004 U.S. Dist. LEXIS 17962 (S.D.N.Y. 2004) is closely on point with the instant matter.  There, the court chastised the insurer's reliance upon a paper reviewing doctor's emphasis of a lack of objective evidence, relying upon Connors and noting that "[t]he subjective evidence of appellant's pain, based on her own testimony and medical reports of examining physicians, is more than ample to establish her disability, if believed."  Id. at *23-24, quoting Connors, 272 F.3d at 136-37.  Magee not only offered compelling subjective information, but, his renowned treating physician, Dr. David Bell, offered strong objective evidence (test results and clinical findings), to support the claim.  For Met Life to suggest otherwise is simply incredulous.


### 4.    MET LIFE TERMINATED CLAIM WITHOUT CHANGE IN CONDITION

Met Life's determination that Magee no longer was eligible for benefits was made despite any change in his medical condition.  Throughout the claim process, Magee secured the support from Dr. David Bell, a leading clinician on Chronic Fatigue Syndrome.  He performed a series of well validated tests upon Magee on numerous occasions.  All of the results supported Magee's

impairment.

Met Life relied upon biased paper reviewing doctors in its effort to dispute the well qualified opinions provided by Dr. Bell. Despite there being any improvement in Magee's condition, Met Life terminated the claim. Decisions to terminate benefits in the absence of a change in condition have been held to be arbitrary and capricious. See Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 136 (2d Cir. 2001)(noting significance of a decision to terminate disability benefits absent any evidence of change in condition), cited in Smith v. Champion Int'l Corp., 2008 U.S. Dist. LEXIS 65346, 36 (D. Conn. 2008); Rappa v. Conn. Gen. Life Ins. Co., 2007 U.S. Dist. LEXIS 91094 (E.D.N.Y. 2007). Thus, "unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments." McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 589 (8th Cir. 2002), quoted by Rappa, at *31-32.

### 5.    FAILURE TO UTILIZE PROPER MEDICAL PROFESSIONALS

Met Life failed to provide Magee with a full and fair review, failing to have the appropriately qualified medical review his claim, and in adopting opinions of biased, paper reviewing doctors over his long standing treating doctor, without proper explanation. It is apparent that the medical reviewers hired by Met Life were not appropriately familiar with Chronic Fatigue Syndrome. Accordingly, Met Life violated ERISA's requirements, by failing to have the claim reviewed by appropriately qualified medical personnel. By doing so, Met Life acted contrary to law and in an arbitrary and capricious manner.

In a claim that presents with conditions that are treated by medical specialists, it is appropriate to have the medicals reviewed by appropriate medical specialists. Robinson v. Met Life

Ins. Co., 2006 U.S. Dist. LEXIS 29648 (S.D.N.Y. 2006)(holding that a full and fair review was not provided to a claimant, where the insurer had file reviewed by an internist); See also Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998); Addis v. The Ltd. Long Term Disability Program, 425 F.Supp.2d 610 (E.D. Pa. 2006).   Given that Chronic Fatigue Syndrome is a challenging medical condition that is not well known to many doctors, it was incumbent upon Met Life to utilize professionals who understand the condition, and are not simply general specialists.[13]

In Addis, the court was particularly troubled by the fact that Met Life "deliberately chose to accept the opinions of its own physician, who was not a specialist, over those of the insured's treating physician, who was a specialist." Id., at 616-17. "Where the treating physician is a specialist who has treated [the] patient over time and the insurer's non-specialist consultant has not, the plan may be required to explain why it relied on its consultant's evaluation and disregarded or only superficially considered the treating physician's findings." Id. Met Life did not appropriately explain why it adopted its paid, paper reviewing doctors over Dr. Bell. Other courts as well have chastised insurers for reliance upon physicians to determine claims when they are simply unqualified to address the conditions at issue. Sexton v. Deloitte & Touche LTD, 2003 U.S. Dist. LEXIS 5185 (D. Minn. 2003)(where court found failure to utilize appropriately qualified physician to be "inexplicable at best").

Met Life will likely argue that it was not required, under Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) to accept the opinions of Magee's doctor. Admittedly, Met Life is not required to simply accept these opinions; however, it is not permitted to simply reject the opinions of a well renowned physician who has actually performed examinations and testing of a patient and

---

[13]     Met Life is sure to argue that Dr. Payne, as an infectious disease doctor, is of the appropriate medical specialty, but that far from answers the necessary inquiry. His ignorance about the condition is revealed in his report, and is well challenged by Dr. Bell.

rendered treatment to a patient for an extended duration, without any sound basis. See Addis, 425 F.Supp.2d at 616.

Here, Met Life simply ignored the medical opinions it did not like - instead relying upon conclusory, baseless, and unfounded generalized medical statements, from each of the paid consultants, all of which are revealing in their inherent inconsistency and/or their lack of foundation for the conclusions. In Nord, the Supreme Court affirmed that the insurer cannot simply refuse to credit the reliable evidence of a claimant, including the opinion of a treating physician that has witnessed the worsening of a claimant's condition, as here. Id. at 832. Simply stated, while Met Life is not required to adopt the opinion of Dr. Bell, Magee's treating physician, who had treated Magee for a long period of time, its failure to properly consider his well founded opinions, restrictions and limitations, without a sound basis to ignore these opinions, violates its ERISA obligations, and renders its claim determination an abuse of discretion. See Lamanna v. Special Agents Mt. Benefits Ass'n, 546 F.Supp.2d 261, 297-98 (W.D. Pa. 2008)(holding that administrator's decision reflected a lack of understanding of Chronic Fatigue Syndrome).

It is apparent that the medical personnel who reviewed Magee's medical records on Met Life's behalf "strained to reach a conclusion" to Met Life's liking. See Paese v. Hartford Life and Accident Ins. Co., 2004 U.S. Dist. LEXIS 6040 (S.D.N.Y. 2004), aff'd in part, vac. in part 449 F.3d 435 (2d Cir. 2006)(holding that the medical professionals were hardly disinterested where one was an in house associate medical director and the other was paid substantial money for his opinion); see Whealen v. Hartford Life & Acc. Ins. Co., 2007 U.S. Dist. LEXIS 51335 (C.D. Cal 2007)(critical of Dr. Payne's incomplete and biased evaluation of records); See also Loucks v. Liberty Life, 2004 U.S. Dist. LEXIS 19664 (W.D. Mich. 2004). Here, Defendant's paid medical reviewers were hardly disinterested and demonstrated their bias in ignoring critical findings, opinions, restrictions and

limitations from Dr. Bell.

In relying upon its paid, paper reviewing physicians, Met Life acted in a biased, result oriented manner.  See Vick v. Met Life, 417 F.Supp.2d 868 (E.D. Mich. 2006).  In Vick, Met Life argued that its decision could not be found to be arbitrary and capricious because it relied upon the reasoned conclusions of two physician consultants.  Id., at 866-67.  The court rejected this position, on the basis, similar to here, that the alleged independent physicians were hand selected and paid, and the reports contained numerous errors and inherent inconsistencies.  Id., at 878.  See Audino v. Raytheon Co. (Met Life), 129 Fed. Appx. 882, 883-84 (5th Cir. 2005)(where the Court was critical of the paper review, and finding lacking a specific analysis of how the claimant's conditions affected her ability to engage in her work functions or why her conditions did not prevent claimant from performing such work tasks).

## IV.    DEFENDANT'S CLAIM DETERMINATION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Substantial "evidence" did not exist to support Met Life's termination of Magee's claim for continued benefits.  Rather, Met Life's claim decision was the culmination of result oriented claim practices designed to prevent a full and fair review of Magee's claim.  Reliance upon the paid consultant reports, who never treated, evaluated or even examined Magee, but made conclusions based solely upon a review of medical records, is not reliable evidence.  See Stup v. UNUM Life Ins. Co., 390 F.3d 301, 309 (4th Cir. 2004)("UNUM failed to adhere to the substantiality requirement by arbitrarily disregarding Stup's reliable evidence, including the opinion of her treating doctors, relying instead on ambiguous insubstantial evidence favoring UNUM's own self-interest."); Quigley v. UNUM Life Ins. Co. of America, 340 F. Supp.2d 215, 223 (D. Conn. 2004)(holding that although

an insurer has no duty to give a treating physician's opinion special weight, it must accept the opinion if there is no credible evidence suggesting that the treating physician's opinion is inappropriate).

In order for expert advice to have credible weight, the administrator must "investigate the expert's background, provide the expert with complete and accurate information, and determine that reliance on the expert's advice reasonably justified under the circumstances." Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1148 (7th Cir. 1998); Gregg v. Transportation Workers of America Int'l, 343 F.3d 833, 841 (6th Cir. 2003); Abrams v. Cargill, 395 F.3d 882, 887 (8th Cir. 2005)("The plan is not free to accept [the report of a reviewing physician] without considering whether its conclusions follow logically from the underlying medical evidence."). The record does not reflect the credentials, experience or expertise of any of the paper reviewing doctors relied upon by Met Life. The record only contains the credentials, experience and expertise of Dr. Bell, Magee's treating doctor. It thus does not appear as if Met Life even investigated the backgrounds and/or expertise of its paid, paper reviewing doctors.

Moreover, the reports which Defendant relied upon also fail to satisfy the requirements of Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Fed. R. Evid. Rule 702. These paid medical reviews cannot be substantial evidence, as a matter of law, since they do not satisfy the reliability requirements of Daubert.[14] As noted above, the paid medical reviewers utilized by Met Life are part of an entity that has been utilized by Met Life in alarmingly increasing amounts over the past several years. Because substantial concern exists regarding the relationship between NMR and Met Life, such that Met Life has utilized NMR in incredibly increasing volume over the

---

[14]    At a minimum, this Court should hold a hearing to determine whether the reviewing physician's reports satisfy Daubert.

course of only a few short years, the degree of skepticism to be formulated about the credibility of the opinions reached by these NMR doctors is heightened.  It is further heightened because the record is devoid of any evidence of the credentials, experience or expertise of the doctors upon which Met Life relied.  Thus, when contrasted against the consistent and well articulated opinions offered by Magee's doctor, who had the benefit of actually examining him many times, it is apparent that Met Life's claim determination simply lacks substantial evidence.

## V.    IF SUMMARY JUDGMENT IS NOT APPROPRIATE, PLAINTIFF IS ENTITLED TO A TRIAL

Should the Court determine that summary judgment is not appropriate, Plaintiff urges that a (bench) trial is the appropriate mechanism for resolving any disputed issues of fact, or of adjudicating the credibility of the parties.  Here, such a trial would be able to be accomplished in approximately a day and a half.  The appropriate witnesses would be Magee, Dr. Bell, the claim handling personnel and the paper reviewing physicians relied upon.

Second Circuit authority reveals that absent an affirmative waiver of a right to a full trial, and an election to proceed upon a paper record, a party is entitled to a full trial, including the taking of testimony.  See Acuff-Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140, 142-43 (2d Cir. 1998).  The use of expert testimony in a case to be decided upon the administrative record is not foreign in this Circuit.  See Masella v. Blue Cross & Blue Shield of Conn., Inc., 936 F.2d 98 (2d Cir. 1991).

## **CONCLUSION**

As articulated above, Magee has demonstrated that review of the claim determination should be *de novo*. Under that standard, Magee must be awarded his benefits.

Magee has also demonstrated that Met Life abused any discretion in terminating his benefits, and its conduct was improper in failing to afford a neutral, full and fair review, and in its claim handling. Accordingly, Magee's motion for summary judgment must be granted. Alternatively, if genuine issues of fact exist, the Court should hold a trial with testimony from witnesses to address the issues in dispute.

Dated: Garden City, New York
      September 2, 2008

Respectfully submitted,

FRANKEL & NEWFIELD, P.C.
Jason Newfield (JN5529)
Attorneys for Plaintiff
Frankel & Newfield, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530

## CERTIFICATE OF SERVICE

On September 2, 2008, I served the within **PLAINTIFF'S Notice of Motion, MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, Local Rule 56.1 Statement, Declaration of Jason Newfield, and Exhibits** by ECF and VIA first class mail addressed to each of the following persons at the last known address set forth after each name:

Allan Marcus, Esq.
Lester Schwab Katz & Dwyer LLP
120 Broadway
New York, New York 10271
(FAX) 212-267-5916

JASON NEWFIELD (JN5529)