Timothy R. Hyland (I.D. No. 010298)
Connie T. Gould (I.D. No. 013544)
**KUNZ PLITT HYLAND**
**DEMLONG & KLEIFIELD**
A Professional Corporation
3838 North Central Avenue, Suite 1500
Phoenix, Arizona 85012-1902
Email: trh@kunzlegal.com
Email: ctg@kunzlegal.com
Tel: (602) 331-4600
Fax: (602) 331-8600

Attorneys for Defendants AT&T Long-Term Disability Plan
and Metropolitan Life Insurance Company

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Booth,<br><br>Plaintiff,<br><br>vs.<br><br>AT&T Long-Term Disability Plan; and Metropolitan Life Insurance Company,<br><br>Defendants. | NO. CIV 05-01249-PHX-SMM<br><br>**DEFENDANTS AT&T LONG-TERM DISABILITY PLAN AND METROPOLITAN LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Defendants AT&T Long-Term Disability Plan (the "Plan") and Metropolitan Life Insurance Company ("MetLife"), reply in support of their Motion for Summary Judgment and respond to plaintiff's Cross-Motion for Summary Judgment. MetLife's decision to terminate plaintiff's long term disability benefits under the AT&T Long-Term Disability Plan ("Plan") should be upheld because MetLife's decision was substantially supported by the documentation in the Administrative Record. The documentation submitted to MetLife by plaintiff does not show any functional impairment that would preclude plaintiff from working at a sedentary work capacity level. Further, six independent

consultants reviewed plaintiff's medical information and reached the conclusion that plaintiff had no functional impairment and/or her functional impairment did not preclude her from performing a sedentary job. Thus, it cannot be said that MetLife's decision was without reason, which is what plaintiff must show under an abuse of discretion standard of review. Defendants' reply in support of their Motion for Summary Judgment and response to plaintiff's Cross-Motion for Summary Judgment is supported by the attached Memorandum of Points and Authorities, Defendants' Statement of Facts in Opposition to Plaintiff's Cross-Motion for Summary Judgment, and the Court's entire file.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. NO CONFLICT IS PRESENT IN THE PLAN DOCUMENTS TO CHANGE THE APPLICABLE STANDARD OF REVIEW BECAUSE THE ADMINISTRATIVE SERVICES AGREEMENT IS NOT A PLAN DOCUMENT**

The Administrative Service Agreement ("ASA") is not a plan document and cannot be used to change the standard of review. The Summary Plan Description ("SPD") clearly identifies what constitutes the plan documents. It states:

**Plan Documents**

This summary plan description summarizes the key features of the AT&T Long Term Disability Plan for Occupational Employees. You can find complete details in the official LTD Plan documents that legally govern the operation of the LTD Plan. All statements made in this summary plan description are subject to the provisions and terms of those documents, which include the:
- Official LTD Plan text
- Trust agreement
- Contract provisions that specifically relate to your benefit claim
- Annual report of Long Term Disability Plan operations, and
- Descriptions as filed with the U.S. Department of Labor.

\*\*\*

> The LTD Plan documents govern the operation of the Long Term Disability Plan at all times.

*See* Defendants' Amended Statement of Facts ("SOF"), Exh. 2, bates no. ML-Booth 0999.

A valid delegation of discretionary authority must be made in the ERISA plan itself or in the SPD. *Crider v. Highmark Life Ins. Co.*, 458 F.Supp.2d 487 (W.D. Mich. 2006). An ASA cannot be used to delegate discretionary authority or change the standard of review because ASAs are not available for review by plan participants. *See, e.g., Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 817 (8th Cir. 2002) (ASA could not be used to change standard of review because the ASA is not "a 'plan document' for purposes of holding its terms against a plan participant or beneficiary."); *Local 56, United Food & Comm. Workers Union v. Campbell Soup Co.*, 898 F.Supp. 1118, 1136 (D.N.J. 1995) ("A formal plan document is one which a plan participant could read to determine his or her rights or obligations under the plan."), *citing Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (noting that one of ERISA's basic purposes was to afford employees the opportunity to inform themselves, "on examining the plan document," of their rights and obligations under the plan).

Plaintiff's reliance on *Banuelos v. Construction Laborers' Trust Funds*, 382 F.3d 987 (9th Cir. 2002) is misplaced because plaintiff has not identified any conflict within the LTD plan documents. Since the ASA is not a plan document, it cannot be used to determine the standard of review to be applied to a claim administrator's decision. The SPD clearly identifies what constitutes the Plan documents, and provides notice to plan participants that the claims administrator "shall have sole and complete discretionary

- 3 -

authority to determine conclusively" any and all questions arising from administration and interpretation of the Plan provisions, to determine all relevant facts, to determine eligibility for benefits, and to determine the amount of benefits payable under the Plan. (SOF ¶ 8; Exh. 2, bates no. ML-Booth 0998). This language clearly bestows complete discretionary authority on MetLife for the administration of claims. Consequently, the abuse of discretion standard applies to the Court's review of MetLife's decision to terminate plaintiff's benefits under the Plan. *See Firestone Tire & Rubber Co.*, 489 U.S. 101, 115 (1989); *Abatie v. Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006).

## II. METLIFE'S CLAIM DECISION MUST BE UPHELD BECAUSE IT WAS NOT ARBITRARY AND CAPRICIOUS AND IS SUPPORTED BY AMPLE EVIDENCE IN THE ADMINISTRATIVE RECORD

An abuse of discretion standard of review is the same deferential standard of review as "arbitrary and capricious." *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 975 n. 5 (9th Cir. 1999); *Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 (9th Cir. 1990). Under this standard of review, the Court must affirm MetLife's decision to terminate benefits if the decision was based upon a reasonable interpretation of the plan's terms and if the decision was made in good faith. *Bendixen v. Standard Life Ins. Co.*, 185 F.3d 939, 944 (9th Cir. 1999). MetLife's decision should not be disturbed unless the Court finds its factual findings were "clearly erroneous." *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879 (9th Cir. 2004) ("in order to be subject to reversal, an administrator's factual finding that a claimant is not totally disabled must be 'clearly erroneous.'"); *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 482 (9th Cir. 1990) (an ERISA administrator abuses its discretion only if the decision is so "patently arbitrary and unreasonable as to lack foundation in a factual basis").

### 1. MetLife Carefully Evaluated All Information in the Administrative Record

Plaintiff's claim that MetLife ignored credible evidence is unsupported by the Administrative Record. First, MetLife's termination letter and MetLife's appeal decision affirming the decision to terminate LTD benefits establishes that MetLife reviewed all information that was submitted to it. The termination letter dated March 10, 2004 states, "[a]ll available documentation has been carefully reviewed." (*See* Exh. 74). This included the Plan's definition of disability, all of the medical information and documentation submitted by plaintiff, Dr. Tingey's opinions, Dr. Smith's opinions, Dr. Tingey's response to Dr. Smith's opinion, and Dr. Smith's reply to Dr. Tingey's opinions. (SOF ¶¶ 97-98). MetLife's letter to Ms. Booth notifying her that MetLife was upholding its decision to terminate LTD benefits also outlines the documents submitted and reviewed by MetLife and states that MetLife reviewed "Ms. Booth's complete file." (SOF 118; Exh. 78).

Second, when defendants discovered that plaintiff had a functional capacity evaluation performed by Theracomp ("Theracomp FCE report") that was not included in its Administrative Record, defendants requested that plaintiff's claim be remanded to the claim administrator to allow MetLife to evaluate this information to assure that plaintiff received a full and fair review of her LTD claim. *See* Defendants' Statement of Facts in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("SSOF"), ¶ 121. On remand, MetLife reassigned the claim to a new analyst for a complete reexamination of plaintiff's claim. In addition, MetLife commissioned three new independent physician consultants to reexamine all of plaintiff's medical records and the Theracomp FCE report. (SSOF ¶ 123). MetLife's reexamination on administrative appeal fully considered

the terms of the Plan, the nature of plaintiff's occupation, and all medical information, including the Theracomp FCE report, as reflected in MetLife's final letter to plaintiff dated January 17, 2008. (SSOF ¶ 156, Exh. 82).

### 2. A Claim Administrator Is Not Required to Give a Treating Physician's Opinion Any Special Weight

Plaintiff's treating physician's opinion conflicted with the opinions of six separate independent physician consultants that reviewed plaintiff's medical records. *See* SOF ¶¶ 109, 116, 177; SSOF ¶¶ 134, 141, 149, 152. Dr. Tingey informed MetLife that plaintiff had a "multitude of symptoms," which included difficulty with low back pain and "possible seizure disorder versus conversion disorder" that made plaintiff "unable to return to work without restrictions." *See* PSOF 196. In contrast, Dr. Grattan and Dr. Babus' reports state that plaintiff had no limitations preventing her from working. (SSOF ¶¶ 141, 149, 154). Drs. Smith, Jares, Marion, and Robbie opined that plaintiff could return to a sedentary job with some work restrictions. *See* SOF ¶¶ 23, 90, 95, 106-117; SSOF ¶¶ 132, 134. MetLife considered Dr. Tingey's opinions as reflected in its letters to plaintiff, but found the independent physician consultants' opinions to be more persuasive as to whether plaintiff had the functional capacity to perform a sedentary job. The fact that MetLife ultimately gave more credit to the opinions of Drs. Smith, Jares, Marion, Robbie, Grattan, and Babus than the opinion rendered by Dr. Tingey does not mean MetLife abused its discretion when terminating benefits. A claims administrator can reject a treating physician's opinion based on other reliable evidence that conflicts with the treating physician's evaluation. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 1972 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's

physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); *Jordan*, 370 F.3d at 879 ("[T]reating physician's opinion gets no special weight and can be rejected on the basis of reliable evidence with no discrete burden of explanation.")

The independent physician consultants' opinions are based on factual information contained within the Administrative Record. MetLife ultimately gave more credit to the independent physician consultants' opinions than those of plaintiff's treating physician. This was not an abuse of discretion because the issue for determining disability was not whether plaintiff could return to work "without restrictions," but rather whether plaintiff was disabled and unable to work under the terms of the Plan. Plaintiff had a sedentary job. MetLife relied on the opinions of six physician consultants who were board certified in preventative medicine and occupational medicine, neurology, physical medicine and rehabilitation, and pain medicine and pain management. (SOF ¶¶ 23, 106, 111; Exh. 77, ML-Booth 0009, 0016; SSOF ¶¶ 124, 135, 146).[1] Each of the independent physician consultants prepared separate written reports that contain specific information that formed the bases of their opinion that plaintiff could perform a sedentary job. It was not unreasonable for MetLife to rely on the opinions of these six independent consultants (Drs. Smith, Jares, Marion, Robbie, Grattan and Babus) when determining whether plaintiff had the functional capacity to perform a sedentary job. The consultants were specialists in their fields of practice. Based on the physicians' detailed opinions containing specific references to plaintiff's medical records, MetLife ultimately gave

---

[1] "The ABCs of Medical Degrees" published by MidMichigan Health states "Board certification indicates that the physician has attained a high level of expertise in their specialty. Passing the certification examination confers the status of Diplomat (indicated by the abbreviation Dipl.)." This Pamphlet is available for viewing at http://www.midmichigan.org/contentstore/The_ABCs_of_Medical_Degrees.pdf.

- 7 -

more credit to the six independent consultants' opinions than to plaintiff's primary care physician. It is well settled that when there is relevant evidence in the administrative record that reasonable minds can accept as adequate to support a conclusion, the administrator's decision <u>must be allowed to control</u>, even if it is possible to draw two inconsistent conclusions from the evidence. *Taft v. The Equitable Life Assurance Society*, 9 F.3d 1469, 1473 (9th Cir. 1994); *see also, LaPrease v. UNUM Life Ins. Co. of America*, 347 F.Supp.2d 944 954 (W.D. Wash. 2004); *Beamish v. The Hartford*, 487 F.Supp.2d 1196, 1202 (W.D. Wash. 2007).

### 3. Plaintiff's Medical Records Show Plaintiff's Condition Had Stabilized and Improved Before LTD Benefits Were Terminated

Plaintiff's claim that MetLife improperly terminated benefits without evidence of a change in plaintiff's condition has no merit. While the Ninth Circuit has not directly addressed the issue of whether a plan administrator is required to produce evidence of medical improvement before disability benefits may be discontinued, the Fifth Circuit has stated that a plan fiduciary <u>is not required</u> to obtain proof of a substantial change in a recipient's medical condition after the initial determination of eligibility. *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 274 (5th Cir. 2004), *see also, Lawrence v. Motorola, Inc.*, 2006 WL 2460921 (D. Ariz. 2006) ("it is not the case that every time a plan administrator discontinues disability benefits, it must produce evidence of medical improvement.")

Here, plaintiff's initial determination of eligibility for LTD benefits was made following a surgical microdiscectomy while plaintiff was experiencing continued back pain that was radiating to her buttocks. *See* SOF ¶¶ 24-27. Plaintiff received LTD benefits while she was recovering from a second back surgery and while receiving

diagnostic testing for a "seizure" disorder and for syncopal episodes. When plaintiff's diagnostic tests were completed, MetLife evaluated whether plaintiff continued to be disabled under the Plan and found she no longer qualified for disability benefits because the medical tests were essentially normal and multiple physicians reported plaintiff had the functional capacity to perform a sedentary job.

Moreover, the Administrative Record shows that plaintiff's condition had, in fact, improved over time. Dr. Robbie's report noted plaintiff's medical records showed she had normal strength, sensations, gait and coordination in her lower extremeties; she had no muscle atrophy; she was able to toe walk and heel walk without any difficulty; and she was able to squat and rise without difficulty. (SSOF ¶ 128). Likewise, Dr. Grattan and Dr. Babus' reports noted that plaintiffs' neurologic examinations were essentially normal with no evidence of decreased power or atrophy, decreased coordination, decreased sensation, abnormal reflexes or abnormal tests that would necessitate restrictions or limitations in work activity. (SSOF ¶¶ 142, 150).

Dr. Tingey informed MetLife that plaintiff's pain had stabilized. (SOF ¶ 94). By October 2003, plaintiff had completed a thorough cardiology work up for her syncopal episodes, which included an implantation of a loop recorder, and plaintiff's cardiologist concluded there were no arrhythmias to correspond to plaintiff's seizure-like activity. (SOF ¶¶ 51 66-68, 75, 89). Plaintiff also had several neurological exams, which were found to be normal, and Dr. Merkel's records (plaintiff's treating pain management physician) also showed improvement. In this regard, Dr. Merkel's records show plaintiff's MS Contin was steadily decreased with no reported discomfort, except for some complaints of tenderness over her lumbar paraspinal muscles. (SOF ¶¶ 72, 76, 81).

Pain that is reduced from radiating pain down to muscle tenderness on physical examination is clear evidence of <u>significant</u> improvement.

### 4. The Relevant Date For Evaluating Whether Plaintiff Was Disabled is the Date LTD Benefits Were Terminated

Plaintiff's focus on her condition while she was having her back surgeries and while she was undergoing diagnostic testing is irrelevant. The fact that MetLife found plaintiff to be disabled in 2002 does not require a finding of continuing disability in 2004. The relevant time frame for determining whether MetLife abused its discretion in determining plaintiff was no longer disabled was plaintiff's condition in March 2004, when MetLife terminated plaintiff's LTD benefits. At that time, plaintiff's diagnostic procedures had been completed, and her tests did not reveal any significant cardiac or neurological abnormalities to account for plaintiff's subjective accounts of back pain and "seizures." (SOF ¶¶ 63, 65, 66-68, 73, 89). Plaintiff's cardiology work up and neurological examinations were essentially normal. *Id.* Plaintiff was still taking narcotic medication, but her records revealed that she was mobile, she independently performed her activities of daily living, and she walked her dog four times a day. (SOF ¶¶ 70, 77).

Moreover, MetLife specifically inquired whether plaintiff's medications could cause functional impairment as of March 1, 2004. Dr. Robbie concluded that plaintiff's medications did not cause functional impairment because there was no documentation in the medical records that plaintiff's medications impaired plaintiff's cognition, memory or attention. (SSOF ¶ 133). Dr. Grattan concluded that plaintiff's clinical picture did not reflect excessive sedation from opioids or safety concerns from opioids. (SSOF ¶ 145). Dr. Babus, a pain medicine and pain management specialist, also concluded that plaintiff's medications did not cause any functional impairment or safety risk because

- 10 -

there was no documentation plaintiff had any psychological effects, memory loss or side effects from medications that would prevent her from returning to work. (SSOF ¶ 154).

MetLife did not abuse its discretion when looking for medical verification whether plaintiff had the functional capacity to perform a sedentary job because this was not MetLife's sole consideration in rendering its decision. MetLife examined plaintiff's diagnoses, her job duties, the treating physicians' physical examinations and assessments, and the opinions of its independent physician consultants. Dr. Jennifer Bortz, a neuropsychologist, noted plaintiff's neuropsychological testing was unreliable due to considerable psychiatric overlay, and Dr. Bortz believed aspects of plaintiff's pain disorder reflected somatization tendencies. (SOF ¶ 62). Dr. Jares and Dr. Robbie, who are both board certified neurologists, confirmed that plaintiff's repeated neurologic examinations only showed mild deficits,[2] plaintiff had no pathology to account for her degree of pain, and plaintiff's physical impairments did not prevent her from performing a sedentary job. (SOF ¶ 109; Exh. 77; SSOF ¶¶ 128-130, 134). Dr. Marion noted plaintiff had normal strength, sensation and reflexes, she could ambulate independently, and she could conduct all of her activities of daily living. (SOF ¶115). Drs. Robbie, Grattan, and Babus similarly concluded that plaintiff did not have any significant findings of physical disability, and her neurological exams were essentially normal. (SSOF ¶¶ 128, 142, 150). Dr. Jares noted plaintiff should be restricted from working at heights, using safety sensitive machinery, and driving a motor vehicle. (SOF ¶ 110). Drs. Grattan and Babus on the other hand concluded plaintiff's medical information did not support a functional limitation. (SSOF ¶¶ 141, 149, 154). MetLife considered all of these factors when

---

[2] Dr Jares noted these deficits consisted of mildly positive straight leg raising, lumbosacral paraspinal muscle tenderness, reduced range of motion of the lumber spine, a reduced ankle reflex, and reduced sensations in the left lower extremity. *See* Ex. 77.

- 11 -

making its decision, not just the consultants' opinions. The evidence submitted in support of plaintiff's LTD claim did not establish that plaintiff's medical condition was of a severity that prevented her from performing the duties of a sedentary job. See Jordan, 370 F.3d at 880 (noting a medical diagnosis does not by itself establish disability preventing a person from working).

MetLife ultimately found the weight of the evidence, including the opinions of Drs. Smith, Jares, Marion, Robbie, Grattan, and Babus, outweighed Dr. Tingey's opinions. The independent physician consultants' reports contain specific reasons why the consultants believed plaintiff was able to perform a sedentary job that are based on specific information contained in plaintiff's medical records and the Theracomp FCE report. MetLife's acceptance of the consultants' opinions over the opinions of Dr. Tingey and the occupational therapist who conducted the FCE is not evidence that MetLife acted arbitrarily. See Jordan, 370 F.3d at 880. A plan administrator does not abuse its discretion merely because there is evidence in the Administrative Record that could have supported an opposite decision. See Taft, 9 F.3d at 1473-1474.

### 5. Plaintiff's Diagnosis of "Conversion Disorder" Does Not Support a Finding of Disability

Plaintiff's diagnosis of "conversion disorder" cannot serve as a basis of disability. The Plan requires that a participant be under a physician's care and following a recommended course of treatment to be disabled. (SOF ¶ 10). Plaintiff did not receive psychiatric or psychological treatment for conversion disorder. Back in May 2002, Dr. Bortz, a neuropsychologist, recommended treatment and provided plaintiff with names of therapists for treatment, but plaintiff never followed through to obtain treatment. (SOF ¶¶ 62, 65, 89, 96; Exh. 45). While Dr. Smith noted MetLife may want to consider an

independent examination by a psychiatrist to determine whether plaintiff had a "mental/nervous" disorder, MetLife was not required to obtain any psychiatric evaluation because it was unnecessary. Plaintiff's disability was based on low back pain. (SOF ¶¶ 38, 39, 86). Plaintiff was not under the care of a psychiatrist or psychologist, nor was she following a recommended course of treatment for conversion disorder. Consequently, plaintiff cannot be found disabled by this condition under the terms of the Plan because she does not meet the requirements of the Plan for a finding of disability for this condition. *See* SOF ¶ 10.

### 6. MetLife Fully and Fairly Considered The Theracomp Functional Capacity Examination When Plaintiff's Claim Was Remanded For Additional Review

The Court is limited to a review of the Administrative Record when determining whether MetLife abused its discretion when terminating plaintiff's benefits under the Plan. *Abatie v. Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006). MetLife did not have a copy of the Theracomp FCE report when plaintiff appealed MetLife's decision to terminate benefits.[3] When defendants discovered that plaintiff had a functional capacity evaluation performed by Theracomp that was purportedly sent to MetLife for its consideration during the appeal process, defendants requested that plaintiff's claim be remanded to allow MetLife to evaluate this new information and to assure that plaintiff received a full and fair review on administrative appeal. (SSOF ¶ 121).[4] On remand,

---

[3] MetLife acknowledges that plaintiff's counsel sent it letters stating that plaintiff planned to obtain a functional capacity examination, but the Theracomp report was never received by MetLife nor was it a part of the Administrative Record when MetLife upheld its decision to terminate benefits and notified plaintiff of its decision in its letter dated October 21, 2004. *See* SOF 118-120; Exh. 78.

[4] Defendants produced a copy of the Administrative Record to plaintiff with its Initial Disclosure Statement on January 4, 2006. Despite knowing for approximately 21 months that the Theracomp FCE report was not a part of the Administrative Record, plaintiff did

- 13 -

MetLife reassigned the claim to a new appeal analyst for a complete reexamination of plaintiff's claim. MetLife requested that all of plaintiff's medical information, including the Theracomp FCE report, be examined by a new neurologist, a physical medicine and rehabilitation specialist, and a pain medicine and pain management specialist. (SSOF ¶ 123). Dr. Robbie, a board certified neurologist, reviewed the Theracomp FCE report and noted that the Theracomp report confirms that plaintiff can perform sedentary to light job functions. (SSOF ¶¶ 124, 129). According to Dr. Robbie, the Theracomp FCE report indicates plaintiff's dexterity movements were average, her gait was slightly slow, balance was normal, she was able to do partial squats, she was able to perform her daily activities without much limitation, she was able to climb, and she was able to lift 18 pounds, all of which indicated an ability to perform sedentary to light work. (SSOF ¶ 130). Dr. Robbie concluded that plaintiff's medical information and the Theracomp FCE report shows that plaintiff retained the ability to perform sedentary to light full time work since March 1, 2004. (SSOF ¶ 134).

Dr. Grattan, board certified in physical medicine and rehabilitation, reached similar conclusions. Dr. Grattan's report noted plaintiff had limited range of motion in the lumbar spine in all directions and the Theracomp FCE report notes subjective limitations to sitting tolerance and upper extremity strength and dexterity that were within normal limits. (SSOF ¶ 140). Dr. Grattan recognized plaintiff had subjective complaints of pain and decreased range of motion secondary to pain. (SSOF ¶ 140). Dr. Grattan also noted that plaintiff's neurologic examinations have remained essentially normal with no

---

not alert MetLife or defendants' counsel that the FCE report had been mailed to MetLife for review during her administrative appeal. When defendants became aware of the FCE report upon review of Plaintiff's Cross-Motion for Summary Judgment, defendants quickly moved for a remand to allow for a review of the report.

- 14 -

evidence of decreased power or atrophy, decreased coordination, decreased sensation, abnormal reflexes or abnormal specific tests for diagnoses that would necessitate restrictions or limitations in work activity. (SSOF ¶ 142). According to Dr. Grattan, the Theracomp FCE report stating plaintiff's sitting tolerance was limited was entirely subjective and self-limited. (SSOF ¶ 143). Dr. Grattan further believed it was unlikely that plaintiff gave full maximal effort during the FCE and raised concerns about secondary gain. *Id.* Dr. Grattan concluded that clinical findings did not support a functional limitation and the clinical findings in plaintiff's medical records suggested that plaintiff could perform at much higher level than what was seen on the FCE. (SSOF ¶¶ 140, 144).

Dr. Babus, a specialist in pain medicine and pain management, noted that the FCE report, by itself, was invalid due to lack of documentation. (SSOF ¶ 152). Dr. Babus noted the Theracomp FCE report had no documentation, either by physical findings or pathology, to support the conclusion that plaintiff could not do sedentary work due to an inability to sit for long periods of time. *Id.* Dr. Babus noted that plaintiff's reported pain was inconsistent with the clinical findings as well as the MRI, CAT scans, and the EMGs that showed no real pathological findings. (SSOF ¶ 152). Moreover, Dr. Babus noted plaintiff's medical information lacked any pain diaries or quantitative analysis of plaintiff's pain, in percentage or VAS scores, to support an inability to do sedentary work. (SSOF ¶ 151). Dr. Babus concluded that plaintiff had no functional limitations from a pain standpoint that impeded her ability to return to work. (SSOF ¶ 149). Consequently, any errors during the first administrative review were corrected on remand and upon MetLife's complete reexamination of the Administrative Record using a new appeals analyst and independent physician consultants. The supplement to the

1  Administrative Record establishes that the Theracomp FCE report was fully reviewed on
2  remand and MetLife's decision that plaintiff has retained functional capacity to perform a
3  sedentary job is justified on factual information within the Administrative Record.

4  **III.   CONCLUSION**

5        The Administrative Record contains a reasonable basis for MetLife's
6  determination that plaintiff's medical condition did not cause functional limitations of a
7  severity that plaintiff was disabled under the terms of the Plan. MetLife considered all of
8  the information that was submitted to it and came to a reasonable conclusion that
9  plaintiff's medical condition does not prevent her from performing a sedentary job. Each
10 of the independent consulting physicians retained by MetLife performed an extensive
11 review and analysis of plaintiff's medical information and concluded that there was no
12 medical information or tests in plaintiff's file showing plaintiff lacked the functional
13 capacity to perform a sedentary job. The consultants were specialists in neurology,
14 physical medicine and rehabilitation, and pain medicine and pain management. MetLife
15 weighed these opinions with plaintiff's self reports of back pain and information
16 contained in the medical records, including the information in the Theracomp FCE report,
17 and determined that plaintiff was no longer able to establish that she was disabled under
18 the terms of the Plan. Because the factual predicate for MetLife's determination that
19 plaintiff was not disabled under the terms of the Plan is within the Administrative Record
20 and the basis of MetLife's decision was fully explained to plaintiff, Defendants' Motion
21 for Summary Judgment should be granted and plaintiff's Cross-Motion for Summary
22 Judgment should be denied.

23 . . .

24 . . .

1     DATED this 29th day of February, 2008.

2

                                        **KUNZ PLITT HYLAND**
3                                         **DEMLONG & KLEIFIELD**
                                        A Professional Corporation

4                                         By    s/Timothy R. Hyland
5                                                Timothy R. Hyland
                                               Connie T. Gould
6                                                3838 North Central Avenue, Suite 1500
                                               Phoenix, Arizona 85012-1902
7                                                Attorneys for Defendants AT&T Long-
                                               Term Disability Plan and Metropolitan
8 ORIGINAL of the foregoing e-filed      Life Insurance Company
  this 29th day of February, 2008, with:
9

10 Clerk
  United States District Court
11 District of Arizona
  401 West Washington
12 Phoenix, Arizona 85003

13 and a COPY hand-delivered this same date to:

14 Honorable Stephen M. McNamee
  United States District Court of Arizona
15 401 West Washington, SPC 60
  Phoenix, Arizona 85003-0001

16 COPY of the foregoing electronically delivered
  this 29th day of February, 2008, to:
17

18 Randolph G. Bachrach, Esq.
  5103 East Thomas Road
19 Phoenix, Arizona 85018-7914
  Attorney for Plaintiff

20

21     s/C. Kolnik

22

23

24

25                               - 17 -