UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
JOHN MAGEE,

      Plaintiff,

  - against -

METROPOLITAN LIFE INSURANCE
COMPANY,

      Defendant.
-----------------------------------------------------------

07 CV 8816 (WHP)

ECF

LOCAL RULE 56.1
STATEMENT OF
MATERIAL FACTS

Pursuant to Local Civil Rule 56.1 of the Local Rules governing the United States District Court, for the Southern District of New York, Plaintiff, John Magee ("Magee"), submits this statement of materials facts:

1. Magee, an eligible employee of the Eastman LTD plan, became disabled under the plan, with benefits effective September 27, 2004, following the satisfaction of a 180 day elimination period. ML04092[1].

2. Magee left work on December 12, 2003 due to his impairment.

3. During the course of Magee's claim, his treating physician offered information to support his diagnosis of Chronic Fatigue Syndrome, noting that both The Center for Disease Control and the National Institute of Health have both stated that Chronic Fatigue Syndrome is a serious and debilitating illness, and that Magee fit the criteria. ML0397.

4. Magee's physician provided numerous letters, assessments of functionality (ML0411-13), and articulation of the impact of Chronic Fatigue Syndrome upon Magee's disability to Met Life (ML0418-20), as well as substantial medical records from office evaluations.

5. On March 1, 004, Magee's physician provided a narrative report outlining Magee's conditions, his symptoms and resulting limitations and restrictions. ML0420.

---

[1] All references to ML- - - are to the record compiled by Met Life, with ranges of ML0001-ML0554. Per discussion with counsel for Met Life, the record is being submitted by Met Life in connection with its motion for summary judgment.

6. His physician noted that Magee had been having difficulties with cognitive function and short term memory, and had been more forgetful. Id.

7. His physician explained that Magee continued to have marked activity limitation, severe fatigue, exhaustion, post-exertional malaise, impaired memory and concentration, muscle pain, joint pain, un-refreshing sleep, and headache. ML0420.

8. On March 12, 2004, an additional medical narrative was submitted, which indicated that Magee suffered from a severe, disabling pain and fatigue. ML0418-19.

9. After conducting a claim review process, Defendant accepted liability of the claim based upon chronic fatigue syndrome and depression. ML0008-09.

10. In accepting liability of the claim, Met Life determined that Magee's "medical is supportive of severity of condition." Id.

11. Met Life further noted that "EE suffers from severe widespread musculoskeletal pain and severe disabling fatigue sleeping up to 14 hours a day, difficulty with short-term memory and concentration." Id.

12. The decision to provide Magee benefits was communicated to him via letter dated September 20, 2004. ML0409.

13. During the pendency of Magee's claim, Social Security determined that Magee was unable to engage in any substantial gainful activity, and awarded him disability benefits effective December 12, 2003 (with the same onset date as his last day worked). ML0303-08.

14. The Administrative Law Judge who conducted the hearing on Magee's Social Security application determined that Magee "has demonstrated that he lacks the residual functional capacity to perform the requirements of any past relevant work" (ML0305), and that he "cannot maintain the minimal sedentary level of exertional activities" (ML0306), and that "fatigue and/or pain would interfere with maintaining a normal work attendance." (ML0306).

15. In support of Magee's claim, his treating physician completed a "Met Life Chronic Fatigue Syndrome Initial Functional Assessment". ML0315-18.

16. On that form, his physician articulated responses to Met Life's inquiries, including that Magee was "unable to sustain activity", suffered "extreme fatigue", had "cognitive difficulties", and was "unlikely to improve". ML0316.

17. Magee's doctor noted on this form that Magee suffered fatigue, pain, post-exertional malaise, energy loss and unrefreshed sleep between 76% and 100% of the time, the most severe category on the form. ML0317.

18. Met Life also received the results from the Krupp Fatigue Questionnaire and the SF-36, two known measures for Chronic Fatigue Syndrome impairment. ML0322-27.

19. Met Life was also provided with an interpretation of results from specific disability questionnaires. ML0347.

20. Magee's Krupp Fatigue score was 56, which is in the disabled range. Id.

21. His modified Karnofsky score is 25 percent also in the disabled range. Id.

22. Lastly, his SF-36, an extremely well validated indicator of overall disability showed marked disability. Id.

23. It was noted that on the six domains of physical functioning, Magee's scoring is beyond what is usually seen in end-stage cardiac or pulmonary disease, while his two emotional functioning scales demonstrate the lack of an emotional component to his impairment. Id.

24. On June 1, 2005, a Medical Source Statement of physical disability was submitted by Magee's doctor. ML0349-51.

25. Also submitted in support of Magee's claim was a Specific Symptom Severity Questionnaire. ML0357.

26. This documentation indicated that Magee suffered from severe memory and concentration impairment, muscle tenderness, and joint pain, and symptoms of headache, un-refreshing sleep and post-exertional malaise. ML0357.

27. On December 7, 2005, Magee was again administered another Krupp Fatigue Questionnaire, SF-36 and Karnofsky scale. ML0328-0333.

28. The results of these dates again indicated significant impairment. ML0328-29.

29. On February 6, 20006, Magee was again administered Krupp Fatigue Questionnaire, SF-36 and Karnofsky scale. ML0322-23.

30. Despite the support from his treating doctor, and Met Life's previous acceptance of liability of the claim, and Social Security's finding of total disability, Magee's claim was thereafter terminated, on July 20, 2006. ML0218-20.

31. Met Life used hired consultants to support its termination of Magee's claim.

32. In connection with his appeal, Magee submitted additional medical evidence from Dr. David Bell, a leading clinician of patients with Chronic Fatigue Syndrome[2]. ML0121-0189.

33. As part of the appeal, Dr. Bell submitted a letter indicating that Magee had a circulating blood volume performed at the University of Rochester by the chromium 51 method, which revealed abnormally low blood volume. ML0192.

34. Dr. Bell noted that these findings are consistent with "severe chronic fatigue syndrome" and cited published literature supporting this position. Id.

35. Dr. Bell also submitted a letter of support for Magee's claim, providing discussion and offering references from peer reviewed literature supporting the diagnosis of Chronic Fatigue Syndrome, his credentials for diagnosing Chronic Fatigue Syndrome, Magee's diagnosis of Chronic Fatigue Syndrome, Magee's disabling symptoms and supportive medical evidence for Magee's impairment. ML0194-97.

36. Magee's appeal also consisted of a personal statement, supportive statements from Magee's wife, niece, former co-worker and friends.

37. On consideration of Magee's appeal, Met Life engaged Dr. Joel Maslow, through Elite Physicians, Ltd. (a subsidiary of NMR)[3] to perform a paper review of the medical records, and to conduct a peer to peer discussion with Dr. Bell. His report is reflected in the claim file. ML0109-0114.

38. Dr. Maslow spoke with Dr. Bell on March 19, 2007. ML0109.

39. In his report, Dr. Maslow indicates that Dr. Bell summarized his care of Magee and Magee's symptoms, and provided his rationale for the diagnosis of CFS. Id.

40. Dr. Maslow, despite Dr. Bell's well articulated support and his substantial experience in evaluating and treating Chronic Fatigue Syndrome patients, determined that Magee did not meet the criteria to be diagnosed with Chronic Fatigue Syndrome. ML0113.

---

[2] Dr. David Bell's Curriculum Vitae is within the administrative record (ML0087-0101) and demonstrates his involvement with Chronic Fatigue Syndrome since 1987, and includes lectures, reviews, publications and public service concerning this severe medical condition.

[3] NMR is well known in the disability community, to provide doctors that deliver results for Met Life. In 2002, Met Life referred 296 claims to NMR, paying them a total of $ 174,485; in 2003, Met Life referred 922 claims and paid NMR $ 568,305; in 2004, Met Life referred 1,500 claims and paid NMR $ 934,690; in 2005, Met Life referred 3209 claims and paid NMR $ 2,063,890; and in 2006, Met Life referred 4,441 claims and paid NMR $ 2,780,795. This information was derived from discovery responses in an action entitled Cosgrove v. Raytheon Co., 06-CV-2107, N.D. Ala. Dist. Court, and executed on May 24, 2007 (Exhibit "C").

41. Dr. Maslow questioned Dr. Bell's "experience to deliver of interpret" the SF-36. ML0112.

42. Dr. Maslow's conclusion that Magee did not meet the criteria for Chronic Fatigue Syndrome deviated not only from Dr. Bell's conclusion, but with that of Dr. Payne, who determined that the diagnosis existed (although he did not believe it supported an impairment in functionality)(ML0271), and with Dr. Goseline, who stated that the diagnosis of Chronic Fatigue Syndrome was established with "extensive information". ML0366.

43. Dr. Bell's April 13, 2007 response letter to Dr. Maslow's "findings" notes that he has written "numerous letters detailing his assessment" of Magee, and reflects that he had a discussion with Dr. Maslow concerning Magee's disability. ML0086.

44. Dr. Bell noted that Dr. Maslow had not read Dr. Bell's reports and seemed completely unfamiliar with the diagnosis of chronic fatigue syndrome. Id.

45. Dr. Bell also criticized Dr. Maslow for lacking familiarity with the diagnostic criteria for Chronic Fatigue Syndrome that was assessed by the Centers for Disease Control, and the roughly 1000 peer reviewed articles. Id.

46. Dr. Bell's April 13, 2007 response reaffirmed his opinion that Magee is "completely and totally disabled due to Chronic Fatigue Syndrome" with "objective medical findings" that had previously been detailed. Id.

47. Dr. Bell invited Met Life to contact him with any specific questions regarding Magee's impairment. Id.

48. Met Life advised Magee by letter dated May 7, 2007 that the decision to terminate his benefits had been upheld. ML0072-83.

Dated: Garden City, New York
September 2, 2008

Respectfully submitted,

_____
JASON NEWFIELD (JN5529)
JUSTIN C. FRANKEL (JF5983)
Attorneys for Plaintiff
Frankel & Newfield, P.C.
585 Stewart Avenue, Suite 312
Garden City, New York 11530
(516) 222-1600